### UNITED STATES v. LONG.
#### No. 14524.

District Court, E. D. Illinois.
Sept. 28, 1936.

Grendel Bennett, Pros. Atty., of Danville, Ill., for the United States.

Thomas Graham, of Danville, Ill., for defendant.

LINDLEY, District Judge.

Defendant was jointly indicted with one Davis in two counts charging violation of the so-called White-Slave Traffic Act, § 2, 18 U.S.C.A. § 398, in the transportation of two girls from Illinois to Indiana for the purpose and with the intent condemned by the statute. Davis pleaded guilty. Long pleaded not guilty and waived a jury trial.

Long and Davis were associated in the show business, being interested in a dancing show then part of a carnival in the small village of Hymera, Ind. Long apparently was the proprietor of this show, conducting it in a tent. Being in need of girls, he procured a note from one of the employees of the carnival who resided in Paris, Ill., to a girl there and proceeded with Davis to Paris, where he presented the note to the young lady to whom it was addressed. She replied that she was unable to go, but introduced the two men to the two girls named in the indictment, each of the age of fifteen years. Long and Davis told them that they were to join Long's show and sell tickets for him. Relying up-

232

on this statement, the mother of one of the girls consented to her daughter going.

Long and Davis then took the girls in an automobile to Hymera, arriving about one o'clock in the morning. The girls slept in a trailer by themselves, and the next day learned that they were to participate in the show as dancing girls. With little or no instruction they joined the wife of Long in a dance presented to the public wherein the three women did so-called muscle or "hootchie-coochie" dances. They were dressed in shorts, a skirt that reached their knees and a brassiere. They were also told by Long and his wife that they should participate in an "after-show," in which the girls testified that Mrs. Long removed her shorts and, at a certain time in the dance, drew open her skirt so that she stood nude before the audience. The price of admission to the after-show was 25 cents; that to the preliminary 10 cents. The girls refused to do the nude dance, and Mrs. Long proceeded with it herself. A number of shows were given each evening. The girls stayed with the carnival some three days and then said they were going home. They never participated in the after-show. One of the girls had sexual intercourse with Davis while she was with the carnival.

The essential question for decision is whether the girls were transported by defendant for the purpose of "prostitution or debauchery or any other immoral purpose" or with the intent upon the part of the defendant to induce them "to become prostitutes or to give themselves up to debauchery" or to engage in any other practices within the meaning of the act. Section 398, title 18 U.S.C.A.

Under the reasoning of United States v. Bitty, 208 U.S. 393, 28 S.Ct. 396, 52 L.Ed. 543, the words "other immoral purposes" mean such other immoral purposes as belong to the same genus as prostitution or debauchery. "Debauchery" contemplated within the act evidently includes corruption of sexual moral principles. In its common meaning "to debauch" is to lead astray morally into dishonest and vicious practices; to corrupt; to lead into unchastity. Debauchery is ordinarily thought of as an excessive indulgence of the body; licentiousness; the taking up of vicious habits. As used in this statute it connotes sexual immorality; it contemplates that character of life which will lead eventually, or tends to lead eventually, to sexual immorality.

Athanasaw v. United States, 227 U.S. 326, 33 S.Ct. 285, 287, 57 L.Ed. 528, Ann.Cas. 1913E, 911. As indicated by the court in the case cited, the question then is whether or not the influences and environment by which the girls were surrounded in their employment tended to induce them to give themselves up to a condition of debauchery, which eventually would lead to a course of sexual immorality. In approving the instructions of the trial court embracing the foregoing doctrine, the Supreme Court said that the statute was designed to reach acts which would "ultimately lead to that phase of debauchery which consists of 'sexual'" immorality.

In Beyer v. United States (C.C.A.) 251 F. 39, girls were employed as entertainers in a dance hall connected with a house of prostitution. Their contract provided that they should not act as prostitutes and that if they were solicited, they were to say that they were not there for that purpose but that others were. The court remarked that the defendant had placed the girls in an environment in which they were likely to be solicited to engage in prostitution and that he intended to and did subject the girls to all the evil influences of the environment mentioned, and approved a conviction. In Burgess v. United States, 54 App.D.C. 71, 294 F. 1002, 1004, the court approved a conviction, saying that the purpose of the act is the suppression of traffic of women and girls with a view to having them engaged "in acts which tend ultimately to lead to that form of debauchery or immoral conduct which consists in sexual actions." In Johnson v. United States, 215 F. 679, L.R.A.1915A, 862, the Circuit Court of Appeals for the Seventh Circuit pointed out that no commercial element or profit is essential, but that the debauchery contemplated by the statute is that which arises out of a course of conduct leading a chaste girl into unchastity.

From the decisions and the facts it appears clearly that the defendant procured the consent of these girls upon the statement that they were to take tickets; that this statement was false; that he contemplated from the beginning that they should do lewd dancing and eventually become dancers in the nude; that the show in which these dances were exhibited was for men; that the nude dances in which they refused to participate drew a higher admission. That such environment tends toward unchastity is shown by the fact that

one of the girls had intercourse with defendant Davis. Fortunately the girls rebelled and returned to their homes. The environment, obviously, as defendant well knew, was such as to come within the language of the decisions above quoted, and as to expose the girls to such influences and environment as would naturally and inevitably so corrupt their mind and character as to lead them to acts of sexual immorality.

That there was no consummation of the purpose of this defendant so far as he himself was concerned is immaterial, for consummation of the purpose is not a necessary element of the completed violation. United States v. Brand (D.C.) 229 F. 847, 849. Transportation is complete if made for the purpose contemplated without regard to whether later the purpose is accomplished. Rizzo v. United States (C.C. A.3) 275 F. 51; Wilson v. United States, 232 U.S. 563, 570, 34 S.Ct. 347, 58 L.Ed. 728.

I conclude from the facts, therefore, that the defendant transported the girls from Illinois to Indiana with the purpose and intent to subject them to an environment, surrounding, and influence which inevitably under natural trends and tendencies would lead them from chastity to unchastity and so into a life of debauchery, and that the defendant, therefore, is guilty as charged in the indictment.