### UNITED STATES v. MELLOR et al.
### No. 547 Criminal.

District Court, D. Nebraska, Norfolk Division.

April 10, 1946.

A. Z. Donato, Asst. U. S. Atty., of Omaha, Neb., for plaintiff.

Eugene D. O'Sullivan and Hugh J. Boyle, both of Omaha, Neb., for defendants.

DELEHANT, District Judge.

The defendants were indicted jointly for the commission of the offense defined in the first clause of Title 18 U.S.C.A. § 398. The indictment charged in a single count that they "did unlawfully, wilfully, knowingly and feloniously transport and cause to be transported, and aid and assist in obtaining transportation for, and in transporting, in interstate commerce from the ranch home of the defendant Ralph B. Mellor in Holt County, * * * Nebraska * * * to the city of Moran, in the state of Wyoming, two certain girls," (whose names are fully set out in the indictment) "for the purpose of prostitution and debauchery and for other immoral purposes, and with the intent and purpose on the part of them, the said Ralph B. Mellor and Charles J. Ford, and each of them, to induce, entice and compel said girls, and each of them, to give themselves up to debauchery and to engage in other immoral practices."

The defendants acting jointly and severally, first, filed (a) a motion for bill of particulars; (b) a motion to quash the indictment; and (c) a special demurrer to the indictment. These pleadings were submitted to the court by arguments of counsel and, upon due consideration, were severally denied and overruled. The defendants were then arraigned and severally pleaded "not guilty." Thereafter, trial of both defendants was had to a jury, at the close of which a verdict of guilty was returned against each defendant. In a single pleading, they have moved severally for a new trial. Counsel have submitted exhaustive written briefs directed to the motion; and this memorandum is designed as a partial reflection of the court's conclusions upon the issues. It is recognized that oral argument may yet be tendered upon the motion; following which further observations upon the case will undoubtedly be orally made by the court, and the ruling upon the motion will be announced. It will be the present purpose of the court to advert in order

to those issues which the defendants have supported by authority and typewritten argument; and thereafter very briefly to comment upon certain others of the many issues tendered by the motion but not argued. The court quite clearly understands that none of them are formally abandoned.

■ Duplicity is charged against the indictment in certain particularized respects. And it is claimed, .first, because two defendants are joined in a single count charging, not conspiracy, but rather the commission of a substantive offense. The court is unable to perceive any virtue in the claim. With becoming candor, counsel for the defendants acknowledge in their brief their own failure to discover any authorities in support of their position. Recognizing that Lucas v. United States 70 App. D.C. 92, 104 F.2d 225, and United States v. Hunt, 7 Cir., 120 F.2d 592, are generally considered to support the course reflected in the present indictment, they endeavor to distinguish those cases by the circumstance that the question arose in each of them upon rejected demands for severance, while here it was presented by motion to quash and special demurrer, as well as upon appropriate attack on the indictment at the trial. But the cited cases do recognize, and rest upon, the propriety of indicting two or more defendants in a single count for the commission of a substantive offense in which both or all of them participate. And that propriety is equally fatal to an attack upon the prosecution thus framed, whether it be made by demurrer or motion to quash on the one hand, or by motion for severance on the other. United States v. Hunt, supra, seems to be directly instructive also in its factual setting. See also United States v. Mullen, D.C., 7 F.2d 244; and United States v. Glass, D.C.Ky., 30 F.Supp. 397. The propriety of indicting jointly, not for conspiracy but for a substantive crime, two or more persons who, together, commit a single offense and participate jointly in the several essential steps leading to its accomplishment can not seriously be challenged. See cases already cited. It is to be acknowledged that in some instances, upon motion, severance for trial of the defendants thus charged may be appropriate and even mandatory. Here no request for such action was made. Nor, the evidence being fairly appraised, would a demand for severance have been well taken.

■ But it is further argued that the indictment duplicitously charges more than one offense in a single count. The point is not well taken, whether it be predicated upon the contemporaneous transportation of more than one girl, or upon the alleged concurrence of more than one of the statutorily identified illicit purposes of the single transportation. The gist of the offense charged here is the act of unlawful transportation; and what is alleged is a single act of transportation. The act is not necessarily to be dissected into several crimes solely because it resulted in the illicit movement in interstate commerce of more than one girl. The precise question has been resolved unfavorably to the defendants in Robinson v. United States 10 Cir., 143 F.2d 276, 278, in which it is competently discussed. Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799; Clark v. United States, 8 Cir., 211 F. 916; United States v. Scott, C.C.Ky., 74 F. 213; Serentino v. United States, 1 Cir., 36 F.2d 871; United States v. Cason, D.C.La., 39 F.Supp. 730; United States v. Westman, D.C.Or., 182 F. 1017.

The court has not overlooked or disregarded those cases which hold that a single act of transportation involving more than one woman or girl *may* constitute as many offenses as the number of persons transported, or an even larger number, in the event that more than one offense arises out of the transportation of one or more of the transportees. Nor is the circumstance neglected that some of them, proceeding beyond their necessary scope, have asserted that such transportation *must* result in a multiplicity of offenses, of which an example is United States v. St. Clair, D.C.Va., 62 F. Supp. 795. In that proceeding to correct a sentence to consecutive terms of penal servitude upon a plea of guilty to separate counts arising out of a series of several transportations, some of which involved two or more women, the only question necessarily involved was whether a single illicit interstate carriage of more than one

woman *might* give rise to an offense for the transportation of each of them. The court correctly replied in the affirmative, but quite gratuitously argued that the transportation *could not* be narrowed to a single offense. Gillenwaters v. Biddle, 8 Cir., 18 F.2d 206, 208, cited upon this point by the defendants, held only that the concurrent transportation in interstate commerce for specified immoral purposes of four women "[*does*] *not necessarily* imply a single offense" but may involve four separate offenses. The writer of the opinion properly argued that the purposes of transporting the four several women might very well differ as to each of them.

■ The test of the unity or multiplicity of offending by what ostensibly is a single operation is whether the same evidence is required to sustain the charge as to the two transported women. If it is, a single offense may be charged and proved. If not, multiple offenses have occurred. The leading case, though in another context, is Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151, in which the Supreme Court found separate offenses to have been committed by a defendant in the cutting of several mail bags which he had stolen at a single time for the purpose of abstracting and keeping their contents. It was reasoned that despite the unity of purpose and of action in the primary taking, a separate and distinct act, in itself statutorily denounced as criminal, was involved in the cutting of each sack; and that each cutting was an offense complete in itself. Emphasis was also placed upon the unquestioned legal positions that proof of the cutting of one sack would not establish the cutting of the others or of any of them; and that conviction or acquittal of the offense of cutting one of them would be no bar to prosecution for the cutting of others of the sacks."

In the instant prosecution, the indictment, recognizing that the transportation of the two girls for a single illicit purpose aimed at both of them might involve a single offense, charged it in that fashion. It was clearly impregnable to motion to quash or demurrer. And upon the trial the evidence warranted the government's course, for the same evidence pursued the defendants throughout the trial in establishing both the transportation and its purpose as to both girls. From the onset of the actual transportation to its end, the evidence does not separate the girls from each other, and, only during brief and immaterial intervals of rest, removes them from the personal company of both defendants who also remained unseparated. And both in the interval between the defendants' accosting of the two girls on the highway and their departure from the Mellor ranch home, and in the period between the arrival of the four people at Moran, Wyoming, and the end of their contact, with only rare and insignificant intervals, the two girls remained together and the two men remained in each other's company, and that, both while all four of them were together, and while the girls were separated from the men. In saying which the court does not overlook the fact that during the two days before the departure from the Mellor ranch the defendants were not always together but with each other's understanding were engaged, sometimes together, sometimes separately, in the completion of arrangements for the journey.

■ The final specification of duplicity urges that the indictment in its single count charges more than one crime against each of the two defendants. One gathers that the duplicity or multiplicity is thought to result from the employment of the language, "transport and cause to be transported and aid and assist in obtaining transportation for and in transporting" as well as the language, "for the purpose of prostitution and debauchery and for other immoral purposes and with the intent and purpose * * * to induce, entice and compel said girls and each of them to give themselves up to debauchery and to engage in other immoral practices." The defendants fortify their position by the citation of Gillette v. United States, 8 Cir., 236 F. 215; Roark v. United States, 8 Cir., 17 F. 2d 570; and Hill v. United States, 8 Cir., 150 F.2d 760, relying also upon the reasoning in Gillenwaters v. Biddle (supra) and United States v. St. Clair, supra, in each of which last two cases the transportation of more than one woman was involved.

Correctly understood Roark v. United States (supra) rejects the defendants' position. Roark was accused in four counts of

the violation of the Mann Act during one interstate transportation in respect of one woman; but two of the counts charged her transportation under Title 18 U.S.C.A. § 398, one for the purpose of inducing her to participate with him in illicit sexual intercourse, the other for the purpose of inducing her to engage in prostitution; and the other two counts, under Title 18 U.S.C.A. § 399, charged him with persuading and inducing her to go in interstate commerce, one to engage with him in illicit sexual intercourse, the other to engage in prostitution. The defendant, having been sentenced upon a plea of guilty to all four counts (upon a theory of the indictment varying from that ultimately adopted by the Circuit Court of Appeals), appealed from the judgment, and contended that he was guilty of only one offense. The appellate court (with Judge Kenyon dissenting) rejected his contention to the extent that it held that one offense, that of transportation, was charged under Section 398, and another, that of persuasion and inducement, under Section 399. That question is not involved here and the comment upon it in the cited opinion is now irrelevant. But, directly upon the present point, the undivided court held that the two counts separately framed under Section 398 and directed at separate purposes (uncompensated and mutually sought sexual intercourse on the one hand, and on the other prostitution) for the single act of transportation, necessarily charged but one offense. It was similarly held that the two counts under Section 399 charged a single crime. Significantly, Judge John B. Sanborn, in his reasoning, says [17 F.2d 573]: "It is one theory of this indictment that, if the person has but one immoral purpose, he is guilty of one crime, and is guilty of as many crimes as he may have immoral purposes. We do not think that the act is susceptible of that interpretation. A violation of either section is a violation, whether the transportation was for one of the purposes named or all of them. It is the obtaining or inducing the transportation for one or more of the immoral purposes which is condemned, and not the having in mind of such immoral purpose or immoral pur-

poses at the time the transportation is obtained or induced."

Nor is Hill v. United States, supra, in point. It held only that an indictment found entirely under Section 398 could not be sustained upon trial, by proof that the defendant induced, enticed or persuaded the female in question to go in interstate commerce for an immoral purpose, where there was a complete default of showing that the defendant had any part in the transportation itself. The ruling was placed upon the ground that the proof responded to Section 399, not Section 398, and that the two sections define distinct crimes; and for authority relied upon La Page v. United States, 8 Cir., 146 F.2d 536, 156 A.L.R. 965 in which a ruling to the same effect had recently theretofore been announced.

Only in Gillette v. United States, 8 Cir., 236 F. 215, 218, can the court perceive any language in a cited opinion which under careful analysis lends any possible support to the defendants' contention, and that assistance is more apparent than real. In the Gillette case an indictment quite loosely prepared in a single court with elements suggestive of both Section 398 and Section 399 was, by the appellate court, considered to have been framed within Section 399. And in the course of its argument the opinion used the following language (which was summarized in the first paragraph of the syllabus) in which the defendants find comfort: "We are of the opinion that to engage in the practice of debauchery and illicit sexual relations is a different offense than the offense mentioned in the first clause of section 3. To engage in the practice of debauchery and illicit sexual relations would seem to indicate a continued course of illicit sexual relations, such as living with a woman in a state of concubinage; otherwise there would have been no necessity for using the language in the second clause of section 3, as the language used in the first clause would have been sufficient. The word 'debauchery' is a word of broad signification. It includes all kinds of excessive indulgence in sensual pleasures of any kind, such as gluttony and intemperance; but the word is used in the statute

with reference to immoral sexual relations." Let the reasoning stand; it seems, nevertheless, not to reach the present point. For it speaks rather of the distinction between the ultimate crimes involved in the several wrongful acts whose commission by the transported female may be the motive or purpose of persuading, inducing, enticing or coercing her carriage in interstate commerce made criminal under Section 399, than of the resolution into a multiplicity of crimes, of the single act of one who is guilty of such persuasion, inducement, enticement or coercion, for the reason that the illicit motive or purpose of his act may have been manifold and complex rather than single and simple.

It will not escape observation that the acts which the opinion thus mentions as two separate crimes are not punishable under any federal statute, but are matters of state concern. The federal statute deals only with the transportation in interstate commerce for the immoral purposes, or any of them. This court is disposed to think that what was not too carefully said in respect of Section 399 in the Gillette opinion applies with equal force—or lack of force—to Section 398, and, to that extent, rejects its attempted distinction by the government. But it is not persuasively instructive as to either section. And other grounds exist for rejecting it as controllingly authoritative in the present instance. The first is that the quoted discussion and the related portions of the opinion can not possibly be more than dictum; for Gillette's conviction was reversed for want of any evidence of illegal intent or purpose until after the completion of the interstate transportation. Secondly, so far, if at all, as the Gillette case may be considered to warrant the argument made from it by the defendants, later opinions of the same court have measurably discredited it. See Roark v. United States and other cited cases to like effect (infra).

The exact issue now before the court was determined adversely to the present defendants' contention in Blain v. United States, 8 Cir., 22 F.2d 393, 395, from which the following quotation is offered: "Finally, it is contended that the indictment was void for duplicity. One of the points here urged is that the indictment charges first a transportation for the purpose of debauchery, and later an enticing and compelling the woman to give herself up to debauchery. A careful reading of the indictment shows that but one offense is charged, viz. one transportation, and that this charge is followed by setting out two purposes. This does not make the indictment duplicitous. It is further urged that the language, 'transport and cause to be transported and aid and assist in obtaining transportation for, and in transporting,' renders the indictment duplicitous. There is no merit in this point. The language used simply covers several means or modes of accomplishing one result. This does not render an indictment duplicitous." See also Collins v. United States, 8 Cir., 20 F.2d 574; Creel v. United States, 8 Cir., 21 F.2d 690; Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097; Caballero v. Hudspeth, 10 Cir., 114 F.2d 545; Robinson v. United States, supra; Freed v. United States, 49 App.D.C. 392, 266 F. 1012.

These cases rest ultimately upon the abundantly fortified rule that the language of the Act is "directed against the transportation 'of any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose'" and that transportation is the gist of the offense. Athanasaw v. United States, 227 U.S. 326, 33 S.Ct. 285, 287, 57 L.Ed. 528, Ann.Cas. 1913E, 911; Wilson v. United States, 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728; Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 283, 57 L.Ed. 523, 43 L.R.A.,N.S., 906, Ann. Cas. 1913E, 905. In the opinion last cited the court succinctly says: "What the act condemns is transportation obtained or aided, or transportation induced, in interstate commerce, for the immoral purposes mentioned."

The defendants insist that, because the indictment fixes Moran, Wyoming, as the terminus of the transportation charged, and the sexual relations between the defendants and the girls to which testimony was directed occurred at Signal Mountain Lodge, a short distance, actually less than two miles, from Moran, the prosecution must fail for want of proof. The point is without substance. The evidence leaves no manner of doubt that

Moran was the designed, and actual terminus of the journey in any realistic sense. Arriving there, the defendants attempted to get lodging at Moran and, failing in that effort, went to Signal Mountain Lodge, in the general community of Moran, and, by the overwhelming weight of the testimony, about a mile and a half from the town of Moran. There they obtained a cabin in which occurred the lascivious conduct that is charged as the purpose of the girls' transportation. So the transportation was actually to the municipality of Moran, and in any event the Lodge, in its location, is within the reasonable significance of the Moran community. But, more pointedly, the lewd conduct at the lodge is not the offense presently prosecuted. It was the purpose or motive of the transportation, and the transportation thus motivated was the real crime; and the conduct at the lodge is entitled to consideration as evidence, along with all the other evidence in the case, of the motive or purpose underlying the transportation. The offense was complete on the crossing of the Nebraska-Wyoming line.

The court next encounters the grave and solemn argument that because, in the course of the journey from Holt County, Nebraska, to Moran, Wyoming, the defendants by prearrangement admittedly stopped the Mellor automobile in which the four persons were riding just east of a point on the way said to mark the interstate boundary and the two girls thereupon left the conveyance and walked a short distance, not more than a few feet, to a point westerly from that boundary at which they reentered the car and proceeded on the journey, there is a complete default of proof of interstate transportation. And error is predicated upon the court's charge that much an incident would not be sufficient to despoil an otherwise unitary transportation of its interstate character.

That contention, and the occurrence to which it is responsive, have undergone careful examination by Judge Graven in United States v. Jamerson, D.C.Iowa, 60 F.Supp. 281. This court agrees with the conclusion reached by Judge Graven and will not amplify his excellent analysis. See also The Bermuda, 3 Wall. 514, 70 U.S. 514, 18 L.Ed. 200, and for its comparable facts Simon v. United States, 4 Cir., 145 F.2d 345. Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed 1331, is cited upon the point by the defendants; but it seems rather to repel their view and to incline towards a unitary interpretation of a journey that might, far more easily than the present one, have been broken into separate constituent elements each complete in itself.

The "border incident" admittedly happened, though the parties to it disagreed upon whose suggestion. Nor is the origin of the idea material. A subterfuge so glaring and so puerile simply can not rob the carriage that happened on its general occasion of its interstate character. Without pausing to enumerate or analyze them, the court merely suggests the intolerable absurdities in civil, commercial, and criminal legal consequences which would flow from the allowance of such a contention.

It may well have had one significance, which, after careful reflection, the court felt it unnecessary to discuss in the charge to the jury. The pitiful device was in its very nature the act of guilty men—and probably guilty girls—with lewd, obscene, and illegal designs. And it might very well have been pointed out to the jury as a notable circumstance by which those designs might be appraised. But the court refrained from that emphasis. It is hardly to be supposed that the jury neglected the meaning of the midnight travesty.

Then, it is argued that there was no sufficient proof of the illicit purpose of the defendants in the transportation of the two girls. The evidence of purpose is obvious, substantial and persuasive. It would warrant no comment, except for the identity which the defendants endeavor to import into a motive for their own journey to Wyoming on the one part, and their purpose or intent in transporting the two girls on the other. It is the latter item which ultimately matters under the statute, although the purpose of the defendants in making the trip on their own account could be, and undoubtedly was, considered by the jury in determining their purpose in the transportation of the girls. The court is satisfied with the accuracy and adequacy of its charge to the jury in that behalf.

The defendants say that they took their trip as a holiday or fishing excursion in pursuance of a preexisting plan that was somewhat elastic touching both its inevitability and the date for the vacation. But that does not determine why they transported the girls. The defendants contend that they merely took the girls along by way of help to them on a hitch-hiking journey to California. Other evidence—and a great deal of it—points to a lascivious purpose for the transportation. And it is that with which this case is concerned. The directly contradictory evidence relevant to the purpose of the transportation was submitted to and passed upon by the jury under an appropriate charge. It may be observed, too, that the denounced illicit purpose need not be the only purpose even of the transportation itself. It may coexist with other purposes, with the clear understanding that it must be an efficient and compelling purpose. Simon v. United States, 4 Cir., 145 F.2d 345.

Mortensen v. United States, supra, again cited by the defendants can not avail them at this juncture. In it, the majority of the Supreme Court declared that the undisputed evidence negatived any illicit purpose whatsoever for the trip, throughout which unimpeachable behavior was exhibited by the participants, who were the defendant proprietors of a Nebraska brothel and two of their female employees. It is wholly otherwise here.

■■■■■ The citation of the Mortensen case prompts the court's attention to the rejected demand of the defendants for the emphasis in the court's charge upon the point of the defendants' purpose in transporting the girls, of the word "dominant" employed by the writer of the prevailing opinion in the Mortensen ruling. In its charge in the present case, the court emphasized and reiterated, that to support a verdict of guilty it was imperative that the government prove the alleged immoral purpose to have been "not a mere incident but rather an efficient purpose prompting and impelling the defendants to the transportation of the girls" and, by explanatory caution, guarded against the misapprehension of that point. It is unnecessary that in the charge to a jury a trial court adopt as a fe-

tish the exact verbiage, however striking, of an appellate court in an earlier opinion in a case arising under the same statute. Perhaps no other occasion more persuasively invites the observance of the scriptural preference of spirit over letter. What may appropriately be said in an opinion by a reviewing judge for the advice of counsel may frequently be misleadingly erroneous in a trial court's charge to a jury.

■■■■■ The defendants now renew upon two grounds their contention, first made in their Demurrer and Motion to Quash, that the indictment itself (a) is so vague, indefinite and uncertain as to violate the rights of the defendants under the Fifth and Sixth Amendments to the Constitution, and (b) violates Article 1, Section 8, of the Constitution in the employment of the word "and" in lieu of "or", as the latter word appears in the material part of Title 18 U.S.C.A. § 398. The authorities do not sustain them.

The indictment follows the language of the cited portion of the statute. Indictments so framed have repeatedly been sustained as sufficient. Crain v. United States (supra); Ackley v. United States, 8 Cir., 200 F. 217; O'Neill v. United States, 8 Cir., 19 F.2d 322; Poffenbarger v. United States, 8 Cir., 20 F.2d 42; Hughes v. United United States, 6 Cir., 114 F.2d 285; Pines v. United States, 8 Cir., 123 F.2d 825; United States v. Brand, D.C.N.Y., 229 F. 847.

And it is equally well settled that where a criminal statute denounces several acts or aspects of an act, employing the disjunctive, "or," more than one of such acts or aspects of an act may be charged in the same count connecting them by the conjunctive, "and." Ackley v. United States, supra; O'Neill v. United States, supra; Poffenbarger v. United States, supra; Pines v. United States, supra. In Ackley v. United States, supra, the circuit court of appeals for the eighth circuit emphatically put the rule in this fashion [200 F. 221]: "Being a statutory crime, the indictment must follow the statute creating the offense. The exception is that, if the statute denounces several things as a crime, the different things thus enumerated in the statute being connected by the disjunctive 'or,' the pleader must connect them by the conjunctive 'and' before

"evidence can be admitted as to more than the one act. To recite that the defendant did the one thing *or* another makes the indictment bad for uncertainty. To charge the one thing *and* another does not render the indictment bad for duplicity, and a conviction follows if the testimony shows the defendant to be guilty of either the one *or* the other thing charged."

Not argued in detail to the court but not abandoned, is the contention that the court was in error in declining to grant the defendants' seasonable motion for a bill of particulars. It is uniformly acknowledged that the allowance or refusal of a motion of that character is within the sound discretion of the court. That discretion is to be exercised in the light of the rule that one accused of crime is entitled to be informed of the charge against him with sufficient particularity to enable him to make his defense and to protect him in a plea of former jeopardy if he should again be prosecuted for the same offense. Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799; Savage v. United States, 8 Cir., 270 F. 14; Hartzell v. United States, 8 Cir., 72 F.2d 569; Pines v. United States (supra); Braatelien v. United States, 8 Cir., 147 F.2d 888.

Naturally, that discretion must be exercised, in the first instance upon the basis of the unaided indictment itself, for the question is presented in advance of trial. The judge must then determine whether there is a reasonable possibility that by the language of the indictment the defendant may be deceived, confused or misled in the presentation of his defense. And if there be such a possibility his discretion should prompt him to grant the motion. But, the trial having been had, the court may appropriately reexamine its earlier course in the light of the actual record. That has been done in the present instance. And the court is abundantly satisfied, that in point of fact, no deceit, misleading or confusion of the defendants, or either of them, resulted from the adverse ruling upon the motion for bill of particulars.

Finally, it is seriously contended that there was error in the court's charge in that the jury was thereby expressly limited in the elements of the offense that would support a verdict of guilty to those features of the indictment upon which relevant evidence had been given. It must be obvious that what the court did was to limit the issues for the jury's consideration to those actually sustained by the evidence. Any other course would have been erroneously prejudicial to the defendants; and the court simply performed its absolute duty. 23 C.J.S., Criminal Law, § 1312, page 906; Chambliss v. United States, 8 Cir., 218 F. 154; Patterson v. United States, 6 Cir., 222 F. 599; Taylor v. United States, 9 Cir., 193 F. 968. In the withdrawal from the jury's consideration of language in the indictment that remained unsupported by any evidence, there was no "deletion" or alteration of the indictment. And it may be remarked that if the court had pursued any other course the defendants would now be assailing it; and with substantial reason.

During the trial the defendants challenged the court's submission to the jury of the question whether debauchery was the purpose of the transportation of the girls; and they seemed then to contend that, since evidence was presented from which it might be inferred that, before the journey the girls, despite their youth, were not wholly inexperienced in immoral sexual relations, their employment for the gratification of the defendants' lustful appetites during a week's sojourn at a vacation resort could not constitute debauchery. Debauchery of a female person is not limited to the initial successful assault upon her virtue or to her more or less enduring persistence in a state of adultery or concubinage. It includes these actions, indeed; but it is a much broader term. And this court will allow some other tribunal to hold that an illicit sexual liaison of some days' duration between two men, both substantially above thirty-five years of age, and two girls, respectively fourteen and fifteen years old, does not involve debauchery if the girls may fairly be considered theretofore to have been sexually impure. It is fortified in that view by abundant authority. Athanasaw v. United States, 227 U.S. 326, 332, 33 S.Ct. 285, 57 L.Ed. 528; Suslak v. United States, 9 Cir., 213 F. 913, 917; United States v. Lewis, 7 Cir., 110 F.2d 460; United States v. Long, D.C.Ill., 16 F.

Supp. 231, 232; Burgess v. United States, 54 App.D.C. 71, 294 F. 1002, 1003, 1004; State v. Duffy, 55 S.D. 110, 225 N.W. 61, 62; Gillette v. United States, 8 Cir., 236 F. 215, 217; Ammerman v. United States, 8 Cir., 262 F. 124, 125; Blain v. United States 8 Cir., 22 F.2d 393, 394, 395.

In fact, the charge in the present case was drawn in strict conformity to that given by Judge Thomas C. Munger of this court in the trial of the action resulting in the opinion in Ammerman v. United States, supra, the original manuscript of which has been available throughout the pendency of this case. The Ammerman case was submitted to the jury upon a single count, in which the sole unlawful purpose of transportation of a woman was charged to have been her "debauchery" without further particularization. And the evidence of purpose, and the court's charge in that case, were oriented entirely to the defendant's purpose to have sexual intercourse, in the state into which the transportation extended, with the transported woman, whose extra-legal sexual favors had been accorded to him even before their journey.

And in Blain v. United States, supra, the circuit court of appeals for this circuit said: "It is further contended that the allegation as to debauchery was insufficient; that the facts should have been alleged. The answer to this contention is that the indictment did set up what was meant by debauchery, and *the facts so alleged come within the definition of debauchery.*" (Emphasis added.) A verbatim quotation from the indictment shows that the specification of debauchery thus approved was: "then and there the said Lovel A. Blain (defendant) and Willie Bragg (transportee) to have unlawful sexual intercourse."

Of the assigned grounds for new trial that are not supported by the briefs little remains to be said. The motion made twice during the trial for directed verdict of acquittal and the requests for specific instructions (to the extent that they are not reflected in the court's charge) rest upon legal issues that have already been adequately discussed.

■ Complaint is made that the statute is wholly unconstitutional. That is no longer a matter for determination by trial courts in view of the repeated and consistent affirmance of its constitutionality by the Supreme and Appellate courts. An essentially identical answer must be made to the contention that the decisions applying the law, of which many have been cited herein, are simply wrong. If that be so, the reversal of the judicial course must come from a source more authoritative than the district court.

[26] Of the court's refusal to honor the defendants' motion to transfer the case from the Norfolk division to the Omaha division of the court, it need only be said that it was resisted and not agreed to by the government, and that no persuasive showing was presented to establish the duty of the court to grant the transfer as a matter of right.

■ The discussion of this memorandum has already adverted to the considerations underlying all of the exceptions taken by the defendants to the court's charge, save one. That deals with the direction that the jury remain together "until your deliberations have been completed," in which the defendants profess to perceive a measure of coercion towards a verdict. Manifestly, the charge refers to the completion of deliberations, not to the arrival at a verdict. It has not the slightest taint of coercion, but is entirely orderly and appropriate. Incidently, in Ammerman v. United States, supra, [262 F. 126], Judge Munger gave an instruction much more stern than the present one, in which he admonished the jury that it would be kept together "until the jury have agreed" and otherwise conditioned separation upon agreement. But upon appeal, exception to it was rejected with the emphatic statement that, "This does not approach coercion." The matter seems thus to be set at rest.

Similarly a charge of misconduct of government counsel is without substance. While certain exceptions upon the point were noted, and motion for a mistrial tendered, the court upon a careful review of the pertinent record adheres to its initial opinion that the incidents stopped far short of misconduct.