**WRIGHT et al. v. UNITED STATES.**

No. 13888.

United States Court of Appeals Eighth Circuit.

June 21, 1949.

Rehearing Denied July 14, 1949.

---

WOODROUGH, Circuit Judge, dissenting.

———◇———

James Royall and M. Gabriel Nahas, Jr., Houston, Tex., for appellant Elmer Lee Wright.

Bert B. Larey, Texarkana, Ark., submitted brief for appellants.

Charles A. Beasley, Jr., Assistant United States Attorney, Fort Smith, Ark. (R. S. Wilson, United States Attorney, and David R. Boatright, Assistant United States Attorney, Fort Smith, Ark., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The appellants were charged, by an indictment (based on the Mann Act, 18 U.S. C.A. § 398, 36 Stat. 825, now § 2421, new Title 18 U.S.C.A.), with having on July 18, 1948, knowingly transported in interstate commerce from Houston, Texas, to Texarkana, Arkansas, a certain woman, for immoral purposes. The defendants (appel-

lants) entered pleas of not guilty, and were tried, convicted and sentenced. By this appeal they challenge the legality of their conviction. They contend: (1) that the evidence was insufficient to support the verdict of the jury; (2) that the court admitted incompetent evidence; and (3) that the court erred in its instructions to the jury. The main contentions of the defendants are that the Government failed to prove (1) that they transported the woman in interstate commerce, and (2) that they had any intent that she should engage in prostitution in Arkansas.

The woman in the case, on July 18, 1948, left Houston, Texas, by automobile and traveled to Texarkana, Arkansas, where a room had been reserved for her at the Savoy Hotel. There she engaged in prostitution. The evidence shows, without dispute, that she was a prostitute, to the knowledge of the defendants; that she was transported by the defendants from Houston, Texas, to Texarkana, Texas; that she walked across the street which constitutes the dividing line between Texas and Arkansas at that point; that, after she left the automobile, the defendants drove, with her traveling bag, to the Savoy Hotel on the Arkansas side of the street, and obtained a room for her there, which she later occupied; that the room had been reserved by telegram from Houston, Texas, for "Mr. and Mrs. W. L. Thomas," the telegram being signed "W. L. Thomas"; that Wright owned the automobile in which the woman was transported; that he was with Moore in the Savoy Hotel when Moore inquired about the room reservation; that when the Assistant Manager of the hotel stated that he had no reservation for Moore, but had a telegram from Mr. and Mrs. W. L. Thomas from Houston, asking for a reservation, Wright said, "That's it"; that the Assistant Manager offered them a room with twin beds; that Moore advised him that Wright would not be with him (Moore)—that Moore's wife would be with him; that "then he took a double-bedded room"; that when Moore and Wright, together, entered the hotel, Moore asked the bell boy if he needed a girl, and received an affirmative answer; that the woman came to the hotel shortly after the reservation was made, occupied the hotel room reserved for her, and practiced prostitution in the hotel.

The assertion that the evidence did not justify an inference that, prior to the end of the journey, the defendants had formed an intent that the woman should engage in prostitution at the Savoy Hotel in Texarkana, Arkansas, is untenable. The jury was justified in finding that the defendants intended to do exactly what they did do, which was to enable this woman to practice prostitution at the hotel. That men may be believed to have intended the natural and necessary consequences of their acts, is too elementary to require discussion or citation of authority; but see Myres v. United States, 8 Cir., 174 F.2d 329. Moreover, the defendants' own admissions to a Special Agent of the Federal Bureau of Investigation showed that the facts were as the Government contends.

The assertion that the defendants never transported the woman in interstate commerce, because she walked across the street from Texas into Arkansas and to the Savoy Hotel, is ingenious, but, in our opinion, unsound. What the Mann Act sought to prevent, or at least to minimize, was the movement in interstate commerce of women and girls for immoral purposes. In the case of Hoke v. United States, 227 U.S. 308, at page 320, 33 S.Ct. 281, at page 283, 57 L.Ed. 523, 43 L.R.A.,N.S., 906, Ann.Cas. 1913E, 905, the Court said: "What the act condemns is transportation obtained or aided, or transportation induced, in interstate commerce, for the immoral purposes mentioned." In Caminetti v. United States, 242 U.S. 470, 491, 37 S.Ct. 192, 197, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168, the Court said: "It [the act] seeks to reach and punish the movement in interstate commerce of women and girls with a view to the accomplishment of the unlawful purposes prohibited. * * * and the authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." In Gebardi v. United States, 287 U.S. 112, 118, 53 S.Ct. 35, 36, 77 L.Ed. 206, 84 A.L.R. 370, appears the following: "Transporta-

tion of a woman or girl whether with or without her consent, or causing or aiding it, or furthering it in any of the specified ways, are the acts punished, when done with a purpose which is immoral within the meaning of the law."

It is true that the defendants did not physically transport the woman across the boundary line between Texas and Arkansas. She got out of the automobile on the Texas side of the street and was not in the automobile when the defendants delivered her bag to the Savoy Hotel and arranged for her reservation. Neither of the defendants stayed at the Savoy Hotel. They contend that their journey ended in Texas. It cannot be gainsaid, however, that the journey of the woman did not end in Texas, but ended at the Savoy Hotel, in Arkansas, and that the defendants had transported her for virtually the entire distance from Houston.

We have found no case which on its facts is identical with the instant case. We think, however, that, in principle, the case does not differ from that of Mellor v. United States, 8 Cir., 160 F.2d 757, 764, certiorari denied 331 U.S. 848, 67 S.Ct. 1734, 1735, 91 L.Ed. 1858. In that case, the girls involved were not physically transported across a state boundary by the defendants, because, before reaching the boundary, the girls left the automobile and walked across the line. This Court said, page 764 of 160 F.2d:

" * * * But we will view the trip in its entirety in determining whether there has been a violation of the Mann Act. We must decline to thwart the legislative purpose of Congress in enacting the statute by holding that defendants could escape the penal consequences of their wrongdoing by the simple process of stopping the vehicle at the state line and having the girls step across that imaginary barrier. The trip was from a point near O'Neill, Nebraska, to another point near Moran, Wyoming. If it was taken with an illicit purpose outlined in the statute defendants are guilty. The jury has resolved the issue against defendants."

See, also, United States v. Mellor, D.C. Neb., 71 F.Supp. 53, 61; and United States v. Jamerson, D.C.N.D. Iowa, 60 F.Supp. 281, 284-285. In the Mellor and Jamerson cases the women involved re-entered the automobile after having walked across the state line, but we regard that as of no legal consequence. As we see it, the important question, in the instant case, is: Did the defendants deliberately transport, or aid in or bring about the transportation of, the woman in interstate commerce? It will not do to say that the defendants were not charged with aiding her interstate transportation, but only with having physically transported her from the one state to the other. At the time the woman was transported (July 18, 1948) and long prior thereto, § 550, Title 18 U.S.C., 1940 Ed., § 332, c. 321, 35 Stat. 1152, provided: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." As restated in § 2(a) of new Title 18 U.S.C.A., effective September 1, 1948, the provision reads: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." See, Ruthenberg v. United States, 245 U.S. 480, 483, 38 S.Ct. 168, 62 L.Ed. 414; United States v. Hodorowicz, 7 Cir., 105 F.2d 218, 220, certiorari denied 308 U.S. 584, 60 S.Ct. 108, 84 L.Ed. 489, 490, and compare, United States v. Giles, 300 U.S. 41, 48-49, 57 S.Ct. 340, 81 L.Ed. 493.

■ We have no doubt that one who deliberately aids or deliberately brings about the interstate transportation of a woman for immoral purposes is as guilty of the offense of transporting her as though he had physically and personally carried her across the state line.[1] The question of the guilt or innocence of the defendants in this case was one of fact for the jury.

■ There is no merit in the defendants' assertions that the court erred in its rulings on evidence. The defendants, after

[1] In the Reviser's Notes to § 2421, new Title 18 U.S.C. page 2613, it is said: "Reference to persons causing, procuring, aiding or assisting was deleted as unnecessary because such persons are made principals by section 2 of this title."

388

their arrest, were separately interviewed by a Special Agent of the Federal Bureau of Investigation, who testified, at the trial, to their admissions. It is contended that the Agent was improperly permitted to testify to what Wright said about Moore and to what Moore said about Wright, and that the witness also made some remarks prejudicial to the defendants, which should have been ordered stricken. The court was meticulously careful about confining the testimony of the Special Agent within legitimate bounds. There are two reasons why the court was not required to strike the remarks which are complained of. The first is that they were not prejudicial, and the second is that the court was not requested to strike them.

■ The defendants assert that the court erred in refusing to give certain requested instructions. We have examined the requests and the charge of the court. The charge we consider entirely accurate, adequate, and eminently fair. Fortunately, a trial judge, in formulating his charge, is entitled to use his own language and is not required to let counsel for either party put words into his mouth. If the charge is accurate and gives to the jury all of the law which it needs in order to reach a verdict, that is enough. A charge should be a concise statement of the claims of the parties, the issues of fact which the jury must decide, and the applicable law. It should not be a compilation of miscellaneous requested instructions.

■ The defendants did not testify. The court, at their request, instructed the jury with respect to the nonprejudicial effect of their failure to testify. While the instruction was not in the exact words requested by the defendants, it was adequate. Compare, Affronti v. United States, 8 Cir., 145 F.2d 3, 9.

■ After the submission of the case, the court gave to the jury, which apparently was having some difficulty, the supplemental charge which, for many years and in many cases, has been approved by this and other federal appellate courts. In substance, it amounts to an earnest request that the jury decide the case if they conscientiously can do so, and thus save the parties the burden and expense of another trial before another jury with no different or better qualifications. Such a supplemental charge was approved in Hewitt v. United States, 8 Cir., 110 F.2d 1, 10, certiorari denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409; Boehm v. United States, 8 Cir., 123 F.2d 791, 812, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200; and Bowen v. United States, 8 Cir., 153 F.2d 747, 751-752, certiorari denied 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611.

The judgments appealed from are affirmed.

WOODROUGH, Circuit Judge (dissenting).

I think the charge of the indictment that the appellants transported the named woman in interstate commerce from Houston, Texas, to Texarkana, Arkansas, was not proven. They transported her from Houston, Texas, to Texarkana, Texas, in an automobile and there unloaded her and terminated their transporting. She went from there to Arkansas by herself pursuant to the inducement, enticement and persuasion of appellants but she was not transported by them. I think Mellor v. United States, 8 Cir., 160 F.2d 757, must be distinguished. In that case there was transportation of the named women in two states and it was held (I think rightly) that the transportation was a unitary interstate transportation and that the trick of letting the women get out of the car to walk across the state line did not divest the transportation of its continuity or of its interstate character. But here there was transportation in only one state and I think the vicious conduct proven against appellants was of state and not federal cognizance.