**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RODNEY FLUCAS, AKA Rodney J.
Flucas, AKA Rodney Rochea
Flucas, AKA Rodney Rochen
Flucas,
*Defendant-Appellant.*

Nos. 19-10065
19-10420

D.C. No.
2:17-cr-00209-
KJM-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted September 3, 2021
San Francisco, California

Filed January 21, 2022

Before: Mary M. Schroeder, Johnnie B. Rawlinson, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Rawlinson;
Concurrence by Judge Schroeder;
Dissent by Judge Bybee

## SUMMARY[*]

### Criminal

The panel affirmed convictions for transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a), and transportation of an individual with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2421(a).

The defendant contended that he is entitled to a new trial because the district court erroneously instructed the jury concerning the requisite intent for transporting an individual or minor for criminal sexual activity in violation of §§ 2421 or 2423. He maintained that the district court improperly instructed the jury that he could be convicted if criminal sexual activity was a motivating purpose of the transportation of an individual, and that the district court was required to instruct the jury that criminal sexual activity must be the dominant purpose in order to establish the requisite intent.

The panel held that the district court did not abuse its discretion in instructing the jury, consistent with this court's precedent, that the government was required to prove beyond a reasonable doubt that a dominant, significant, or motivating purpose of the transportation of the defendant's victims was to engage in criminal sexual activity. The panel wrote that the non-retroactive amendment to 18 U.S.C. § 2423(b), a statute under which the defendant was not charged, does not undermine the consistent precedent throughout the circuits

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

rejecting the "dominant purpose" *mens rea* advocated by the defendant.

The panel addressed the defendant's additional challenges to his convictions in a concurrently filed memorandum disposition.

Concurring, Judge Schroeder wrote to underscore key points that in her view undermine the dissent: (1) the dissent views as binding language the Supreme Court used more than seventy years ago in a case that raised different issues; (2) courts have routinely treated "motivating" and "significant" as interchangeable; and (3) one cannot assume that the addition of "or motivating" to the instruction was responsible for a second jury convicting after the first jury did not.

Dissenting, Judge Bybee wrote that no court has considered whether "a motivating purpose" is different from "a dominating or significant purpose," and that in his view, those terms are not synonymous. He wrote that the instruction lowered the government's burden of proof, contrary to the holding in *Mortensen v. United States*, 322 U.S. 309 (1944), and this court's Mann Act decisions; and that the error is not harmless beyond a reasonable doubt.

**COUNSEL**

Brian C. McComas (argued), Law Office of B.C. McComas LLP, San Francisco, California, for Defendant-Appellant.

Veronica M.A. Alegria (argued), Assistant United States Attorney; Camil A. Skipper, Appellate Chief; Phillip A. Talbert, Acting United States Attorney; United States Attorney's Office, Sacramento, California; for Plaintiff-Appellee.

**OPINION**

RAWLINSON, Circuit Judge:

Rodney Flucas (Flucas) appeals his convictions for transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a), and transportation of an individual with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2421(a). The evidence presented during a jury trial demonstrated that Flucas sexually abused his daughters and other minors in his household over several years, and was the father of numerous children from his own daughters. The issue that confronts us in this appeal is whether the district court properly instructed the jury that it could convict Flucas if a motivating purpose of his transportation of his victims from Oregon to California was to engage in criminal sexual activity. Flucas maintains that the district court was required to instruct the jury that the government must prove beyond a reasonable doubt that the dominant purpose of his transportation of his sexual abuse victims was to engage in criminal sexual activity. Flucas asserts that he was entitled to this instruction in support of his

theory of defense that the dominant purpose of his transportation of his victims from Oregon to California was to obtain a higher paying job, not to engage in criminal sexual activity.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm Flucas' convictions. We hold that the district court did not abuse its discretion in instructing the jury, consistent with our precedent, that the government was required to prove beyond a reasonable doubt that a dominant, significant, or motivating purpose of the transportation of Flucas' victims was to engage in criminal sexual activity.[1]

## I. BACKGROUND

In a third superseding indictment, Flucas was charged with "knowingly transport[ing] in interstate commerce and foreign commerce individuals Person 1, Person 2, and Person 3, each of whom had not attained the age of 18 years, with intent that each such individual engage in sexual activity for which any person could be charged with a criminal offense" in violation of 18 U.S.C. § 2423(a). The indictment alleged that Flucas engaged in incest, sexual intercourse, and oral copulation with Person 1, Person 2, and Person 3 in violation of California law. Flucas was also charged under 18 U.S.C. § 2421(a) with "knowingly transport[ing] in interstate commerce and foreign commerce an individual, Person 4, with intent that such individual engage in sexual activity for

---

[1] In a memorandum disposition filed concurrently with this opinion, we address Flucas' additional challenges to his convictions.

which any person could be charged with a criminal offense, to wit: incest in violation of California Penal Code § 285."[2]

During Flucas' second trial,[3] Person 1 testified that, in 2014, she met Person 2, Flucas' daughter, in Oregon, and started living at Flucas' residence. Person 1 stated that Flucas was the father of her son, who was born in Stockton, California, when Person 1 was sixteen years old. Person 1 related that Flucas started to "touch [her] in a sexual manner" when she was fifteen years old, and had intercourse with her between one and three times a week. Flucas instructed Person 1 not to tell anyone about the sex acts, and to fabricate a name for the father of her child.

Flucas told Person 1 that he wanted her to move with him to California in 2015 because she "was having his child." Flucas threatened Person 1, that if she attempted to stay in Oregon with her father or stepmother, he would "bring [her] back" to him. Person 1 did not believe that she "had a choice about moving" to California. Person 1 testified that Flucas continued to have intercourse "[a] few times a week" with her in California. Person 1 did not believe that she "could stop what was happening to [her]."

Person 2, Flucas' daughter, testified that Flucas started to have intercourse with her when she was thirteen years old. Person 2 became pregnant with Flucas' child in 2013, when

---

[2] A third count alleging that Flucas transported Person 2 and Person 3 with intent to engage in criminal sexual activity, was dismissed.

[3] In Flucas' first trial, the jury convicted Flucas of attempted witness tampering, but was unable to reach a verdict on the transportation offenses.

she was fifteen years old, but lost the child. During an investigation by child protective services, Person 2 did not disclose the sexual abuse or that Flucas was the father of her child. Prior to her interview, Flucas warned Person 2 that she knew "what and what not to say."

Person 2 testified that she moved with Flucas to Klamath Falls, Oregon, when she was fifteen years old, after he lost his job in Americus, Georgia, due to allegations by "her little sisters' and brothers' grandmother" of sexual abuse. They relocated to Oregon because Flucas was "trying to move away from . . . the people who were [making] the allegations." Person 2 related that Flucas continued to sexually abuse her in Oregon.

In 2017, Person 2 realized that she was unable to protect her sisters, and decided that she "didn't want to live anymore." Person 2 attempted to commit suicide by crashing her car into a pole. At the hospital, Person 2 informed law enforcement about the sexual abuse.

Person 3, Flucas' daughter, testified that Flucas started to sexually abuse her when she was six years old, and had intercourse with her for the first time when she was thirteen years old. Flucas promised that he would purchase a cell phone, computer, and car if she had intercourse with him. Person 3 confirmed that Flucas continued to have intercourse with her after moving to Oregon and California.

Person 3 related that in 2017 she attempted to commit suicide with "a bunch of [Flucas'] narcotics" because she "didn't want to be [in his house] anymore." Person 3 testified that she slept for most of the day until Flucas returned home. Person 3 stated that, when Flucas returned, he took her into

a closet in his bedroom, where she vomited and they "had sex." When Person 3 was interviewed by child protective services, Flucas told her to deny any sexual abuse.

Person 4, Flucas' daughter, testified that Flucas was the father of her three children. Person 4 related that, in August, 2008, she was living with Flucas in Valdosta, Georgia. In February, 2010, Flucas started to touch Person 4 "in a sexual manner," when she was in the ninth grade. Person 4 testified that she was fifteen when Flucas began having intercourse with her. Person 4 related that she was "confused," and became physically attracted to her father because he "made [her] believe that [she] was the only one he wanted and . . . he could take care of [her] and [her] kids." Person 4 told her sisters about the sexual abuse, but Flucas convinced them that she was lying. Person 4 subsequently "covered up" her story at Flucas' insistence. Flucas also told Person 4 that he had "recordings in the phones and cameras in the rooms to see what you all are doing," and commanded that "[w]hat happens in this house stays in this house."

When Person 4 gave birth to her first child, Flucas told her to fabricate the name of a father. Flucas also instructed her not to provide the name of a father on the child's birth certificate. According to Person 4, Flucas told her that he wanted to have "seven more kids" with her, and was angry when she attempted to use birth control.

In April, 2014, Person 4 was interviewed by the Georgia Department of Family and Children's Services. Person 4 lied to the investigators when she told them that Flucas did not sexually abuse her. Person 4 related that she subsequently moved with Flucas and other members of his household to Americus, Georgia, where they resided for approximately one

month. Person 4 testified that it was Flucas' idea to move to Americus, and that he continued to have intercourse with her.

Flucas was eventually fired from his job in Americus, Georgia, when his employer was informed about sexual abuse allegations. Flucas, Person 4, Person 4's two children, Person 3, Person 2, and other members of the household subsequently moved to Klamath Falls, Oregon, in September, 2014. Person 4 testified that Flucas would not allow her to contact her mother to inform her where she was residing. While in Oregon, Person 4 became pregnant with her third child.

Person 4 related that, in August, 2015, Flucas decided to move to Stockton, California. Flucas prohibited Person 4 from contacting her mother. Flucas continued to have intercourse with Person 4 in California. Flucas also told her that, if she ever married, she "still [had to] have sex with him."

Person 4 related that, after Person 2 was involved in an accident, Flucas threatened Person 4 that, "If I go down you go down. For every child you have, there's like a three-year sentence." Person 4 was interviewed by a detective after Person 2's accident, and was confronted with DNA results indicating that Flucas was the father of her children. As directed by Flucas, Person 4 told the detective that she "inseminated [herself] with a syringe" with semen from his condoms.

Person 4 testified that Flucas had intercourse with her on October 28, 2017, at a hotel in California. According to Person 4, Flucas told her that they could move to Switzerland, Rhode Island, or New Jersey, where incest was legal.

Person 5 testified that her mother was in a relationship with Flucas, and that Flucas sexually abused Person 5 when she was eight years old. Flucas had intercourse with Person 5 for the first time when she was thirteen years old. Flucas told Person 5 that she was "his soulmate," and that, "if [she] cheated on him, he'd kill [her]." Person 5 explained that she was unable to tell anyone about the sexual abuse because she didn't think she would be believed. Person 5 eventually thought she was "in love" with Flucas.

Person 5 testified that Flucas was the father of her six children. Flucas instructed Person 5 to fabricate the name of a father for the children. Flucas also told Person 5 that he wanted to have between eight and ten children with her.

Person 5 moved with Flucas to Oregon in March, 2015, when she was "eight or nine months pregnant." Person 5 testified that Flucas continued to have intercourse with her in Oregon. When they subsequently moved to Stockton, California, Flucas prohibited Person 5 from informing her mother. Flucas continued to have intercourse with Person 5 in California, and Person 5 became pregnant.

When Person 5 was interviewed by a detective, she was presented with DNA results indicating that Flucas was the father of her children. Person 5 told the detective that she inseminated herself with Flucas' sperm because "that's the story that Mr. Flucas told [her] to say."[4]

---

[4] The dissent characterizes the evidence of Flucas' guilty as "flimsy." *Dissenting Opinion*, p. 66. The dissent bases this characterization on Flucas' testimony that he moved to California for a better paying job. *See id.* at 66. But this characterization does not acknowledge powerful testimony from the victims detailing Flucas' controlling behavior, his

Flucas testified that he had intercourse with Person 4, his daughter, and acknowledged that sexual abuse occurred while residing in Georgia. However, Flucas maintained that he moved to California to seek a better paying job. Flucas' defense was that he moved for financial reasons, not to transport his daughters and the other minors for criminal sexual activity.

At trial, the government proposed the following instruction with respect to the intent requirements for a conviction under 18 U.S.C. § 2421 and 18 U.S.C. § 2423:

> To find the defendant guilty of Count One and/or Count Two, you need not find that the intended criminal sexual activity was the defendant's sole or most important purpose. It is sufficient if the government proves beyond a reasonable doubt that the sexual activity was a significant, dominant, or motivating purpose. In other words, the government must prove that the criminal sexual activity was not merely incidental to the transportation. A person may have more than one significant, dominant, or motivating purpose for transporting others across a state line.

The government proposed the instruction because the jury in Flucas' first trial "struggled with the intent instruction and asked for further clarifying instructions," and the proffered

travels from other states where he was under investigation, and his refusal to allow his victims to notify their relatives that they had moved.

instruction "added clarity about the nature of the intent instruction."[5]

Flucas objected to the proposed instruction because "it [was] not sufficient for the government to prove that illegal sexual activity was a motivating purpose," and proposed an alternative instruction:

> It is not necessary for the government to prove that the (prostitution or) illegal sexual activity was the sole purpose for any transportation from one state to another. A person may have several different purposes or motives for such travel and each may prompt in varying degrees the act of making the journey. The government must prove beyond a reasonable doubt, however, that a significant or dominant purpose of the travel from one state to another was to have the person(s) transported engage in (prostitution or) illegal sexual activity.
>
> The Government must prove that the criminal sexual activity was not merely incidental to the transportation.

The district court determined that use of the term "motivating" was consistent with legal precedent, and instructed the jury that:

---

[5] During Flucas' first trial, the jury asked the district court to "clarify the court's definition of intent, beyond the instructions given."

To find the defendant, Mr. Flucas, guilty of Count 1 and/or Count 2, you need not find that the intended criminal sexual activity was the defendant's sole or most important purpose.

It is sufficient if the government proves beyond a reasonable doubt that the sexual activity was a significant, dominant or motivating purpose.

In other words, the government must prove that the criminal sexual activity was not merely incidental to the transportation.

A person may have more than one significant dominant or motivating purpose for transporting others across a state line. To find Mr. Flucas guilty of Counts 1 and/or 2, the government must prove that Mr. Flucas intended Person 1, 2, 3 and/or 4 to engage in criminal sexual activity after transporting them from one state to another state, not that anyone actually engaged in such conduct.[6]

---

[6] The dissent's speculative assertion that "we must assume that [the jury] chose the common denominator – 'motivating' – because satisfying that standard would automatically satisfy the higher standards of 'dominant' and 'significant'" is accompanied by no supporting authority. *Dissenting Opinion*, p. 65.

The jury found Flucas guilty, and the district court imposed a life sentence. Flucas filed a timely notice of appeal.[7]

## II. STANDARDS OF REVIEW

"We review the formulation of jury instructions for abuse of discretion, but review de novo whether those instructions correctly state the elements of the offense and adequately cover the defendant's theory of the case. . . ." *United States v. Koziol*, 993 F.3d 1160, 1179 (9th Cir. 2021) (citation and internal quotation marks omitted).

## III.    DISCUSSION

Flucas contends that he is entitled to a new trial because the district court erroneously instructed the jury concerning the requisite intent for transporting an individual or minor for criminal sexual activity in violation of 18 U.S.C. § 2421 and 18 U.S.C. § 2423. Flucas maintains that the district court improperly instructed the jury that Flucas could be convicted if criminal sexual activity was a motivating purpose of the transportation of an individual, and that the district court was required to instruct the jury that criminal sexual activity must be the dominant purpose in order to establish the requisite intent.

---

[7] Because Flucas filed his notice of appeal on February 15, 2019, "after the . . . announce[ment of] a . . . sentence" on February 12, 2019, but "before the entry of the judgment" on February 25, 2019, his appeal is "treated as filed on the date of and after the entry [of the judgment]." Fed. R. App. P. 4(b)(2).

In interpreting the elements for transportation and travel offenses, we have consistently held that a dominant, significant, or motivating purpose to engage in criminal sexual activity satisfies the intent requirement. In *United States v. Kinslow*, 860 F.2d 963 (9th Cir. 1988), *disapproved of on other grounds by United States v. Brackeen*, 969 F.2d 827, 829 (9th Cir. 1992) (en banc) (per curiam), we affirmed the defendant's conviction for "interstate transportation of a minor for sexual purposes in violation of 18 U.S.C. § 2423." *Id.* at 964, 970. In rejecting the defendant's assertion that "the evidence was legally insufficient to support his conviction . . . because sexual misconduct was not a dominant purpose in the transportation of [the minor] across state lines," we responded that "[i]n this circuit, a federal crime under 18 U.S.C. § 2423 exists if the immoral activity is one of the dominant purposes of the transportation." *Id.* at 967 (citation and internal quotation marks omitted). We further emphasized that it was "not necessary . . . that the immoral activity be the only purpose of the trip." *Id.* Instead, we concluded that:

> [The defendant] asserts that his only purpose in taking [the minor] across state lines was to insure his own safe passage from Arizona to California. While this may have been one of his goals, the jury was entitled to find that [the defendant] also intended to assert sexual control over the females in the . . . family and that this was one of the reasons he took them all into California. . . . A rational trier of fact could have found that one of the dominant

purposes in transporting [the minor] across state lines was to have her available to him for immoral, sexual purposes.

*Id.* at 967–98.

In *United States v. Lukashov*, 694 F.3d 1107, 1110 (9th Cir. 2012), we considered the defendant's challenge to his conviction for aggravated sexual abuse in violation of 18 U.S.C. § 2241(c).**8**  The defendant maintained that the evidence supporting his conviction was insufficient because "his purpose in traveling to New York and back to Oregon was to pick up and deliver goods in his capacity as a long-haul truck driver." *Id.* at 1118.  The district court instructed the jury that:

> The government need not prove that the Defendant traveled across a state line for the sole and exclusive purpose of engaging in a sexual act.  A person may have different purposes or motives for travel and each may

---

**8** 18 U.S.C. § 2241(c) provides in pertinent part:

Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, . . . knowingly engages in a sexual act with another person who has not attained the age of 12 years, or knowingly engages in a sexual act under the circumstances described in subsections (a) [by force or threat] and (b) [by other means in a federal enclave] with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life.

prompt in varying degrees the act of making the journey. For purposes of this element, the government must prove beyond a reasonable doubt that a dominant, significant, or *motivating purpose* of Defendant's travel across a state line was to engage in a sexual act with [the minor]. In other words, the government must prove the sexual act was not merely incidental to the travel.

*Id.* (alteration omitted) (emphasis added). Unpersuaded by the defendant's assertion that criminal sexual activity must be the sole purpose for his travels, we held that:

A rational jury could have found beyond a reasonable doubt that once [the defendant] formed the intent to sexually abuse [the minor], whether that occurred before he started the trip or only after he dropped off [another minor] in Montana and was alone in his truck with [his victim], he had that illicit intent for the rest of the trip, until he returned her to her mother in Portland. Given the repeated instances of abuse after the first time in Montana, a jury could rationally infer that [the defendant] crossed the Montana–North Dakota and subsequent state lines with a dominant, significant, or *motivating purpose* of committing additional sexual acts. That [the defendant] also had a commercial purpose for crossing state lines does not negate the inference that he had a significant or motivating purpose to continue abusing [the minor] because, *as the district court*

> *correctly instructed the jury*, the government
> did not have to prove that sexually abusing
> [the minor] was the sole purpose of [the
> defendant's] interstate travel. . . .

*Id.* at 1118–19 (citation and internal quotation marks omitted)
(emphases added).

In reaching this conclusion, we relied on the Tenth
Circuit's decision in *United States v. Cryar*, 232 F.3d 1318
(10th Cir. 2000). *See id.* at 1119. In *Cryar*, the defendant
asserted that there was insufficient evidence supporting his
conviction for "cross[ing] the state line between Texas and
Oklahoma with the intent to engage in a sexual act with a
six-year old girl in violation of 18 U.S.C. § 2241(c)."
232 F.3d at 1319. The defendant specifically argued that "the
dominant purpose of his crossing the state line  . . . was to
earn a living, and not to commit a sexual act." *Id.* at 1324.
The Tenth Circuit disagreed, concluding that "there was
ample evidence for a jury to determine that *a motivating* or
dominant purpose of [the defendant's] travels to Oklahoma
was to spend time with and attempt to engage in sexual acts
with a child under twelve years old." *Id.* (citation omitted)
(emphasis added).

In *United States v. Lindsay*, 931 F.3d 852, 864 (9th Cir.
2019), we applied *Lukashov* and rejected a challenge to a jury
instruction delineating the intent requirements for a
conviction under 18 U.S.C. § 2423. In that case, the district
court instructed the jury that:

> the United States does not have to prove that
> Defendant traveled in foreign commerce for
> the sole and exclusive purpose of engaging in

> illicit sexual conduct. The government must prove that a dominant, significant, or *motivating* purpose of Defendant's travel in foreign commerce was to engage in illicit sexual conduct.

*Id.* at 858 (internal quotation marks omitted) (emphasis added). In addressing the defendant's assertion that the statutory term "'for the purpose of' clearly refers to a but-for causation standard, contrary to the 'dominant, significant, or motivating' standard the district court applied," we clarified that:

> It is not obviously wrong to interpret "for the purpose of" as applying to any dominant, significant, or *motivating purpose* to account for that fact, as a plain understanding of the phrase can encompass multiple intentions. For instance, in common conversation a person can travel to the grocery store "for the purpose of" buying milk and getting gas if both milk and gas are motivating reasons for the excursion.

*Id.* at 864 (emphasis added). In light of consistent precedent that a motivating purpose to engage in illicit sexual activity may support the intent requirements for transportation and travel offenses, we held that "the district court did

not plainly err by instructing the jury that [the defendant] traveled in foreign commerce for the purpose of engaging in illicit sexual activity if that purpose was dominant, significant, or *motivating*." *Id.* (emphasis added). Although we applied plain error review in rejecting the defendant's

challenge to the jury instruction, we nonetheless adhered to the principles articulated in *Lukashov* that the defendant's contention "ignore[d] the human ability and propensity to act in light of multiple motives and purposes." *Id.* at 864, quoting *Lukashov*, 694 F.3d at 1118.

The dissent minimizes the import of *Lindsay* because it was decided on plain error review. *See Dissenting Opinion*, pp. 55–56. Although "[a]n error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results," *United States v. Gnirke*, 775 F.3d 1155, 1164 (9th Cir. 2015) (citation and internal quotation marks omitted), that was not the standard applied in *Lindsay*. Rather, we considered *Lukashov* and concluded that it was not error to instruct the jury regarding the defendant's "motivating purpose." 931 F.3d at 864. Notably absent was any mention of the lack of "controlling authority" or conflicting precedent. *Gnirke*, 775 F.3d at 1164. In any event, in order for plain error to exist, there must first be error. *See United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020), *as amended*. In *Lindsay*, we found none. *See Lindsay*, 931 F.3d at 864.

The dissent's conclusion that there was no plain error in *Lindsay* "[g]iven the confusion in the courts," rests upon a proposition which we never mentioned or relied on. *Dissenting Opinion*, pp. 55–56. Rather, our holding that the district court did not err in instructing the jury that a dominant, significant, or motivating purpose suffices to establish the requisite intent is bolstered by a long line of consistent and uniform cases from our sister circuits.

In *United States v. Hayward*, 359 F.3d 631 (3d Cir. 2004), the defendant asserted that "the District Court should have

instructed the jury that criminal sexual activity had to be '*the* dominant'-rather than '*a* significant or motivating'-purpose of the trip to England in order to convict." *Id.* at 637 (emphases in the original). Instead, the district court instructed the jury that:

> It is not necessary for the government to prove that the illegal sexual activity was the sole purpose for the transportation. A person may have several different purposes or motives for such travel, and each may prompt in varying degrees the act of making the journey. The government must prove beyond a reasonable doubt, however, *that a significant or motivating purpose of the travel across state or foreign boundaries was to have the individual transported engage in illegal sexual activity. In other words, the illegal sexual activity must have not been merely incidental to the trip*.

*Id.* (emphasis in the original). In approving the district court's instruction, the Third Circuit observed that:

> [The defendant] points to no case in which any Court of Appeals required a jury instruction that criminal sexual activity must be *the* dominant purpose of interstate travel to support a conviction under 18 U.S.C. § 2423(a). The Government relies on decisions by the First, Second, Fifth, Sixth, Seventh and Tenth Circuits, in which criminal sexual activity was one of a number of multiple motives for interstate travel. Those

courts declined to reverse convictions where the respective district court had refused or failed to give "the dominant purpose" jury instruction that [the defendant] now requests.

*Id.* at 638 (citations omitted) (emphasis in the original).

In *United States v. Campbell*, 49 F.3d 1079 (5th Cir. 1995), the Fifth Circuit similarly analyzed the intent requirements for 18 U.S.C. § 2421 and 18 U.S.C. § 2423. *See id.* at 1082. The defendant asserted that "the evidence was insufficient to allow a reasonable jury to find that his dominant purpose in traveling was to engage in prostitution." *Id.* (internal quotation marks omitted). The defendant "question[ed] whether a dominant purpose can exist under the Mann Act when an equally compelling but innocent purpose for traveling exists," and asserted that the prostitute's "visit was motivated at least equally by the desire to visit her child." *Id.* at 1083 (internal quotation marks omitted). The Fifth Circuit rejected "this line of arithmetic hairsplitting," because "[t]he dominant requirement does not impose a but for limitation on the defendant's intent." *Id.* (internal quotation marks omitted). The Fifth Circuit explained that:

In determining whether a dominant purpose exists, we instead ask whether the illicit behavior is one of the efficient and compelling purposes of the travel. Accordingly, many purposes for traveling may exist, but, as long as *one motivating purpose* is to engage in prostitution, criminal liability may be imposed under the Act. When no dominant purpose exists, it is because any

such purpose was either non-existent or incidental.

*Id.* (citations and internal quotation marks omitted) (emphasis added). The Fifth Circuit concluded that "[w]hile it is true that [the prostitute] did have a child in the area, and they could have been traveling in order to visit the child, this fact is not inconsistent with the prostitution plan. A reasonable jury could find beyond a reasonable doubt that the group was traveling to New Mexico to visit [the prostitute's] daughter *and* engage in prostitution." *Id.* (emphasis in the original); *see also United States v. Hitt*, 473 F.3d 146, 152 (5th Cir. 2006) (holding that evidence that the defendants "engage[d] in a grooming process designed to reduce [the victim's] resistance to sexual advances" was sufficient to demonstrate that the defendants "transported the victim to Louisiana with an efficient and compelling purpose to engage in illicit sexual activity") (citations and internal quotation marks omitted).

In *United States v. Vang*, 128 F.3d 1065 (7th Cir. 1997), the Seventh Circuit, in affirming a conviction under 18 U.S.C. § 2423(b), explained that the evolving intent standard for transportation and travel offenses originated with the Mann Act. The Seventh Circuit observed that "[t]hough enacted in 1994, the statutory antecedents of § 2423(b) date back to the early part of this century." *Id.* at 1069. "Congress made the statute gender-neutral in a 1986 amendment, retired the purpose test for interstate transportation, and clarified the amorphous phrase any immoral purpose by narrowing the statute's coverage to illegal sexual activity." *Id.* (footnote reference and internal quotation marks omitted). "Section 2423 evolved from this same legislative initiative as an effort to protect minors from predatory sexual conduct by adults," and "[i]n 1994, Congress created § 2423(b) in a further

attempt to expand the protection of minors. The new statute punishes mere travel in interstate commerce—even if no transportation of a minor was involved—if the defendant is found to have traveled for the purpose of engaging in any sexual act (as defined in another Code section) with a minor." *Id.*

The Seventh Circuit concluded that the Supreme Court's statement in *Mortensen v. United States*, 322 U.S. 369 (1944) that, under the Mann Act, illicit sexual activity "must be the *dominant* motive of such interstate movement" was dicta. *Id.* at 1071 (emphasis in the original). The Seventh Circuit observed that "many circuits have upheld jury instructions and convictions where an immoral purpose was at least one of the purposes *motivating* the interstate transportation." *Id.* (citations and internal quotation marks omitted) (emphasis added). "Other courts have used a dominant purpose standard, but have regarded dominant as synonymous with compelling or motivating, and they have never held—as Defendants urge here—that interstate travel can have only one dominant purpose." *Id.* (citations and internal quotation marks omitted). In approving the jury instruction provided by the district court, the Seventh Circuit held that:

> the district court's instructions to the jury interpreting § 2423(b)'s "purpose" element properly reflect this circuit's law. At the most fundamental level, the defendants fail to convince us that *Mortensen's* use of the word "dominant" grafted a new requirement onto the Mann Act that an immoral purpose must be "the dominant purpose" of interstate travel. Congress has not used the word "dominant" in either the Mann Act or § 2423(b), and we are

not prepared to read such a requirement into the statutes. . . . Courts . . . have consistently used the word "dominant" to mean merely "significant" or "compelling" or "efficient"; there has never been any implied requirement of preeminence of purpose. We are simply not willing to break ranks with our sister circuits on this matter for the sake of semantic purity.

*Id.* at 1072.

In *United States v. Perkins*, 948 F.3d 936 (8th Cir. 2020), the Eighth Circuit recently considered the intent requirements for 18 U.S.C. § 2423(a) in discerning the *mens rea* for violations of 18 U.S.C. § 2241(c). *See id.* at 937. The Eighth Circuit explained that:

The intent element of § 2241(c) is an issue of first impression for the Eighth Circuit. We have, however, addressed the intent element in cases involving the interstate transportation of a minor for the purpose of engaging in illegal sexual activity under 18 U.S.C. § 2423(a). To prove the intent element under § 2423(a), the illicit behavior must be *one of the purposes motivating* the interstate transportation, but need not be the dominant purpose, and the sexual activity just may not be merely incidental to the trip. The Eighth Circuit has also held intent for § 2423(a) may be inferred from all the circumstances, including the defendant's own statements.

*Id.* at 938–39 (citations, alteration, and internal quotation marks omitted) (emphasis added).

Thus, a common analytical thread runs through our precedent and that of other circuits for transportation offenses—the requisite intent may be established when the defendant has a dominant, significant, or motivating purpose for transporting an individual in order to engage in criminal sexual activity.

The dissent basically advocates straying from this precedential harmony to hold that the district court committed instructional error as a matter of law. In its analytical journey, the dissent initially relies on *Hansen v. Haff*, 291 U.S. 559, 562–63 (1934), a pre-World War II case, for the proposition that "[p]eople not of good moral character, like others, travel from place to place and change their residence. But to say that, because they indulge in illegal or immoral acts, they travel for that purpose, is to emphasize that which is incidental and ignore what is of primary significance." *Dissenting Opinion*, p. 40. The dissent's reliance on this general language from *Hansen* does nothing to diffuse the contemporary, consistent precedent underlying the district court's proper instruction.

The dissent next lands on *Mortensen v. United States*, 322 U.S. 369 (1944), *Cleveland v. United States*, 329 U.S. 14 (1946), *Hawkins v. United* S*tates*, 358 U.S. 74 (1958), and *Daigle v. United States*, 181 F.2d 311 (1st Cir. 1950) in support of its contention that the defendant's intent to illicit sex acts not be "a mere incident but rather an efficient purpose prompting and impelling the defendants to the transportation of the girls." *Dissenting Opinion*, pp. 42–43, 45–46. Our precedent and that of other circuits is consistent

with this proposition, and also consistent with the instruction given by the district court that the criminal sexual activity could not be the "incidental purpose" of the defendant's travel or transportation for criminal sexual activity as distinct from the travel. *See Lukashov*, 694 F.3d at 1118–19; *Lindsay*, 931 F.3d at 864; *Hayward*, 359 F.3d at 637; *Campbell*, 49 F.3d 1083; *Perkins*, 948 F.3d at 938–39.

Importantly, in *United States v. Ellis*, 935 F.2d 385 (1st Cir. 1991), the First Circuit took great pains to explain the consistency among the holdings in *Daigle*, *Mortensen*, and *Hawkins*, and the motivating purpose jury instruction:

> [The defendant] contends the court erred in rejecting his proffered alternative charge that the dominant purpose of the transportation must be the intent to engage in sexual activity with the minor. [The defendant] points to the Supreme Court's holding in [*Mortensen*], construing an earlier Mann Act provision that preceded the present 18 U.S.C. § 2421. . . .
>
> Seven years after *Mortensen*, [in *Daigle*] this Circuit reviewed a district court's instruction that the jury could convict so long as it found that one of the purposes of the interstate transportation was an immoral one. Notwithstanding *Mortensen's* language on the dominant motive, we upheld the instruction. Both before 1950 and thereafter many other circuit courts took the same position, namely, that it was enough if *one* of the efficient purposes of the interstate transportation was to engage in the outlawed activity.

[The defendant] urges us to reconsider *Daigle* as being inconsistent with the Supreme Court's venerable pronouncements in *Mortensen* and elsewhere on dominant motive. We are not persuaded. Quite apart from the 40 years that have elapsed since *Daigle*, and its widespread acceptance, we believe *Daigle's* reasoning to be sound and not inconsistent with *Mortensen*. As the *Daigle* court pointed out, there was in *Mortensen* a total lack of evidence of any purpose for the interstate journey other than the innocent one of giving the women a deserved vacation from their work as prostitutes in their bawdy house. Thus the Court had no reason to consider the question of multiple purposes. It is true that the language in *Mortensen* alluding to a single dominant purpose was repeated in a footnote in [*Hawkins*], but in *Hawkins* the Court was concerned with a very different issue. No more than *Mortensen* itself does *Hawkins* contradict *Daigle* on the narrow issue of interstate journeys involving several motives.

In the present case, as in *Daigle*, the district court . . . sufficiently met the requirements of *Mortensen*, as interpreted in *Daigle*, by requiring that criminal sexual activity be one of the several motives or purposes not a mere incident of the trip or trips, but instead was at least one of the defendant's motivations for taking the trip in the first place.

*Id.* at 389–90 (citations, alterations, footnote reference, and internal quotation marks omitted) (emphases in the original).

The dissent also relies on a 1947 decision from the Eighth Circuit, *Mellor v. United States*, 160 F.2d 757 (8th Cir. 1947). *See Dissenting Opinion*, p. 45 n.2. However, the Eighth Circuit has remained steadfast, as of 2020, in applying the motivating purpose standard. *See Perkins*, 948 F.3d at 938–39 (stating that "to prove the intent element under § 2423(a), the illicit behavior must be *one of the purposes motivating* the interstate transportation, but need not be the dominant purpose, and the sexual activity just may not be merely incidental to the trip") (citations, alteration, and internal quotation marks omitted) (emphasis in the original).

The dissent's approach closely resembles the argument advanced by the defendant and rejected by the Third Circuit in *Hayward*. As the Third Circuit observed, "[the defendant] points to no case in which any Court of Appeals required a jury instruction that criminal sexual activity must be *the* dominant purpose of interstate travel to support a conviction under 18 U.S.C. § 2423(a)." 359 F.3d at 638 (footnote reference omitted) (emphasis in the original). The Third Circuit further emphasized the uniformity of the circuits on this issue: the "First, Second, Fifth, Sixth, Seventh and Tenth Circuits, in which criminal sexual activity was one of a number of multiple motives for interstate travel . . . declined to reverse convictions where the respective district court had refused or failed to give *the* dominant purpose jury instruction that [the defendant] now requests." *Id.* (citations and internal quotation marks omitted) (emphasis in the original).

Against this backdrop of uniform precedent, the dissent relies on *United States v. Generes*, 405 U.S. 93 (1972), "a tax

case" for which the dissent contends "the particulars are not important to us." *Dissenting Opinion*, p. 60. We disagree. The "particulars" are important because they reveal the lack of applicability of this tax case to the instruction given by the district court in this criminal case.

In *Generes*, "[a] debt a closely held corporation owed to an indemnifying shareholder-employee became worthless in 1962." *Generes*, 405 U.S. at 94. The issue was "whether, for the shareholder-employee, that worthless obligation was a business or a nonbusiness bad debt" under the Internal Revenue Code and corresponding Treasury Regulations. *Id.* The Treasury Regulation specified that "the character of the debt is to be determined by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a *proximate* one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt comes within the exception provided by that subparagraph." *Id.* at 95 n.2 (alteration omitted) (emphasis added). The Supreme Court explained that "[i]n determining whether a bad debt is a business or a nonbusiness obligation, the Regulations focus on the relation the loss bears to the taxpayer's business," and that "[i]f, at the time of worthlessness, that relation is a proximate one, the debt qualifies as a business bad debt and the aforementioned desirable tax consequences then ensue." *Id.* at 95 (internal quotation marks omitted). Resolution of the issue "turn[ed] on the proper measure of the required proximate relation." *Id.*

"At the trial Mr. Generes testified that his sole motive in signing the indemnity agreement was to protect his $12,000-a-year employment with the corporation," and the

district court instructed the jury that a "significant," as opposed to a "dominant" motivation, "satisfie[d] the Regulations' requirement of proximate relationship." *Id.* at 99 (footnote reference omitted).

The Supreme Court "conclude[d] that in determining whether a bad debt has a proximate relation to the taxpayer's trade or business, as the Regulations specify, and thus qualifies as a business bad debt, the proper measure is that of dominant motivation, and that only significant motivation is not sufficient." *Id.* at 103. In delineating the dominant motivation standard for debts under the Tax Code and Treasury Regulations, the Supreme Court stated in full[9] that:

> The dominant-motivation standard has the attribute of workability. It provides a guideline of certainty for the trier of fact. *The trier then may compare the risk against the potential reward and give proper emphasis to the objective rather than to the subjective. As has just been noted, an employee-shareholder, in making or guaranteeing a loan to his corporation, usually acts with two motivations, the one to protect his investment and the other to protect his employment.* By making the dominant motivation the measure, the logical tax consequence ensues and prevents the mere presence of a business motive, however small and however insignificant, from controlling the tax result at the taxpayer's convenience. This is of

---

[9] The dissent omits the highlighted language utilized by the Supreme Court in articulating the standard. *See Dissenting Opinion*, p. 60.

particular importance in a tax system that is so largely dependent on voluntary compliance.

*Id.* at 104 (emphasis added).

There are notable distinctions between the standard articulated in *Generes* and the standard applied to travel and transportation offenses for criminal sexual activity. First, the applicable Treasury Regulation, in defining nonbusiness debt, "focus[ed] on the relation the loss bears to the taxpayer's business. If, at the time of worthlessness, that relation is a *proximate* one, the debt qualifies as a business bad debt and the aforementioned desirable tax consequences then ensue." *Id.* at 96. In contrast, the criminal statutes prohibiting transportation of individuals and minors for criminal sexual activity are not premised on a "proximate relation," instead establishing criminal liability for a defendant who "*knowingly* transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, *with intent* that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense," 18 U.S.C. § 2421(a) (emphases added), or who "*knowingly* transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with *intent* that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2423(a) (emphases added).

Second, the Supreme Court developed the dominant motivation standard in the tax context in order to prevent "the mere presence of a business motive, however small and however insignificant, from controlling the tax result at the

taxpayer's convenience." *Generes*, 405 U.S. at 104. This reasoning is consistent with the district court's instruction that "the government must prove that the criminal sexual activity was not merely incidental to the transportation."

Third and finally, the Supreme Court emphasized that:

> The Code itself *carefully distinguishes* between business and non-business items. . . . The point . . . is that the tax statutes *have made the distinction*, that the *Congress therefore intended it to be a meaningful one*, and that the distinction is not to be obliterated or blunted by an interpretation that tends to equate the business bad debt with the nonbusiness bad debt. We think that emphasis upon the significant rather than upon the dominant would have a tendency to do just that.

*Id.* at 103–04 (emphases added). The dissent does not point to any similar distinctions intended by Congress in its efforts to prohibit the transportation of minors and other individuals for criminal sexual activity.

Thus, the dissent ostensibly posits that the district court should have imported the "dominant motivation" standard used to determine a nonbusiness debt under the Treasury Regulations to instruct the jury concerning the charges brought against Flucas for transporting minors or other individuals and engaging in criminal sexual activity. *See*

*Dissenting Opinion*, p. 60.  In light of *Lukashov*,[10] *Lindsay*, and consistent precedent from other circuits, we decline to hold that the district court erred as a matter of law in not instructing the jury based on the dissent's formulation of a standard applied in tax cases.

Contrary to the dissent's assertions, *see Dissenting Opinion*, pp. 61–64, we are unconvinced that the non-retroactive amendment to 18 U.S.C. § 2423(b), a statute involving travel with intent to engage in illicit sexual conduct that Flucas was not charged under, has any bearing on the instructional issue raised in this appeal.[11]  Prior to December, 2018, 18 U.S.C. § 2423(b) provided that:

> A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, *for the purpose* of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(b)(2017) (emphasis added).  In December, 2018, pursuant to the Abolish Human Trafficking Act of 2017, Congress amended 18 U.S.C. § 2423(b) in order to

---

[10] The best argument that the dissent can muster against our reasoning in *Lukashov* is that it was dicta.  *See Dissenting Opinion*, p. 56.  But dicta or not, it was consistent with the other precedent approving the language in the district court's instruction.

[11] The amendment to 18 U.S.C. § 2423(b) to specify "a motivating purpose" standard has not been applied retroactively.  *See United States v. Lieu*, 963 F.3d 122, 126 n.1 (D.C. Cir. 2020).

"combat sex tourism" by removing "for the purpose of" from 18 U.S.C. § 2423(b) and adding "with a motivating purpose" in its place. Pub. L. 115-392, December 21, 2018, 132 Stat 5250, 5256.

The Seventh Circuit's discussion in *United States v. McGuire*, 627 F.3d 622 (7th Cir. 2010) of the "purpose" requirement for 18 U.S.C. § 2423(b), prior to the 2018 amendment, is instructive. In that case, the government only charged the defendant with violating 18 U.S.C. § 2423(b). The Seventh Circuit detailed the practical ramifications of the government's charging decision resulting from the statutory distinctions:

> Section 2421 is the original Mann Act, as amended in minor respects. Section 2423(a), intended to protect minors from sexual predation, mirrors the Mann Act but imposes more severe penalties. Section 2423(b), the provision under which the defendant was prosecuted, was added to expand the protection of minors still further; it punishes travel in interstate commerce even if no minor is transported, if the purpose of the travel is sex with a minor. (Prosecutors frequently use this section to prosecute persons who cross state lines to rendezvous with minors whom they meet in online chat rooms). Section 2423(c) was added to punish persons who travel in foreign commerce and have sex with a minor in the course of the trip regardless of what the defendant intended when he set out on it. It is apparent that if, as the jury found, the defendant had molested [the victim] on

their travels, he violated sections 2421, 2423(a), and 2423(c).  But inexplicably the government charged the defendant only with violating section 2423(b), which requires that the *travel* be for the purpose of engaging in illegal sexual activity.  This charging decision . . . enabled the defendant to argue that the purpose of his trips was merely to conduct retreats; sex was not the purpose but a welcome byproduct . . . of the opportunities that the retreats created, as the boys were more vulnerable when far from home and the defendant's molestation of them was less likely to be detected by his religious superiors, who as we know had suspected him for many years of being a child molester yet had taken no effective steps to protect young boys from him.

*Id.* at 624 (citations omitted) (emphasis in the original).

In its amended form, 18 U.S.C. § 2423(b) requires that the government demonstrate that "a motivating purpose" of the defendant's travels was to engage in illicit sexual activity. *See* 18 U.S.C. § 2423(b) (2021).  It bears emphasizing that, despite decades of precedent holding that a dominant, significant, or motivating purpose may suffice to establish the requisite intent for 18 U.S.C. § 2423(a), Congress did not amend that statutory provision in any fashion.  Notably, 18 U.S.C. § 2423(a), in stark contrast with the amended version of 18 U.S.C. § 2423(b), does not use the term "purpose," instead providing that "[a] person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any

commonwealth, territory or possession of the United States, *with intent that the individual engage in prostitution, or in any sexual activity* for which any person can be charged with a criminal offense." 18 U.S.C. § 2423(a) (emphasis added). "We do not construe statutory phrases in isolation; we read statutes as a whole, and where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Orozco-Lopez v. Garland*, 11 F.4th 764, 776–77 (9th Cir. 2021) (citations, alterations, and internal quotation marks omitted).

In sum, we are not persuaded that the non-retroactive 2018 amendment to § 2423(b) has any bearing on whether the district court abused its discretion in instructing the jury. Rather, we conclude that the district court correctly instructed the jury in accordance with our precedent and that of our sister circuits with respect to the intent requirements under 18 U.S.C. §§ 2421(a) and 2423(a). After all, if Congress wanted to also amend § 2423(a), it could have easily done so.

## IV. CONCLUSION

The district court did not abuse its discretion in instructing the jury concerning the intent requirements for 18 U.S.C. §§ 2421(a) and 2423(a). The instruction comported with our precedent, as well as that of our sister circuits, that the government must prove beyond a reasonable doubt that a dominant, significant, or motivating purpose of the transportation of the individuals was to engage in criminal sexual activity. The non-retroactive amendment of a statute that Flucas was not charged under does not undermine the

consistent precedent throughout the circuits rejecting the "dominant purpose" *mens rea* advocated by Flucas.

**AFFIRMED.**

---

SCHROEDER, Circuit Judge, concurring:

This is not a complicated case. As Judge Rawlinson's opinion documents, the language in this instruction has been provided to juries for decades and approved by appellate courts. It required the jury to find that illegal sexual activity was a "significant, dominant, or motivating purpose" of the travel. I concur in Judge Rawlinson's opinion but write briefly only to underscore the key points that in my view undermine the dissent.

First, the dissent views as binding language the Supreme Court used more than seventy years ago in a case that raised different issues than those raised here. The statute here requires interstate travel "with intent" to engage in unlawful sexual activity. *See* 18 U.S.C. §§ 2421(a), 2423(a). The Supreme Court's opinion in *Mortensen v. United States* said that such intent must be a "dominant motive" for the travel. 322 U.S. 369, 374 (1944). But the problem in *Mortensen* was that the defendants had no intent to engage in unlawful activities during their travel. *See id.* at 372. They were taking a vacation from their business of running a brothel. *See id.* That was "undisputed." *See id.* The Court was therefore not referring to any required quantum of unlawful intent. The dissent thus fastens on to words that do not come from a case where the defendant traveled with any unlawful intent, much less from a case like this, where the defendant

intended to engage in unlawful sex with members of his household while moving them to a different state.

Second, although the dissent acknowledges that the instruction the parties agreed to was appropriate, the only difference between that instruction and this one was the addition of the phrase "or motivating" to the adjectives "significant" and "dominant." As the district court observed, it is hard to see how the addition makes any difference, and even harder to imagine how the jury would have understood "motivating" as describing a materially lower standard than "significant." As the majority opinion demonstrates, courts have routinely treated the words as interchangeable. That this instruction has so long been given to juries without being questioned in this way only underscores the lack of perceptible difference between "dominant," "significant," and "motivating."

Third, the dissent surmises that this jury likely did see a difference because the first jury did not convict and the second jury did. Even assuming the phrase was added erroneously, we can not assume the addition could have been responsible for the different result. Retrials differ from first trials in many ways, only some of which might affect the jury's perceptions. Here, for example, in the second trial, the government changed its presentation to concentrate on the defendant's activities during one time period rather than two. The second jury thus heard a more focused presentation that could have affected its understanding of the case. In contrast, for the change in the wording of the instruction to have possibly mattered, there would have to be some likelihood that the jury shot a perceived gap between "significant" and "motivating," a gap neither the district judge, nor any other judges reviewing similar instructions has ever thought

existed.  The dissent is thus not supported by facts, semantics, or precedent.

BYBEE, Circuit Judge, dissenting:

Rodney Flucas is not a sympathetic defendant.  There is overwhelming evidence that Flucas groomed young girls for sex, including his own daughters.  He has fathered at least ten children with these young women, making him the father of his own grandchildren.  Although he likely can be charged for these acts in the states of Georgia, Oregon, and California, the question in this case is whether Flucas has violated a federal law, the Mann Act, 18 U.S.C. §§ 2421–24, for transporting women and minors across state lines with the intent to engage in criminal sexual activity.  Flucas moved his family from Oregon to California when he accepted a new, better-paying position as a special education teacher in Stockton.  But as the Court trenchantly observed:  "People not of good moral character, like others, travel from place to place and change their residence.  But to say that, because they indulge in illegal or immoral acts, they travel for that purpose, is to emphasize that which is incidental and ignore what is of primary significance." *Hansen v. Haff*, 291 U.S. 559, 562–63 (1934).

At Flucas's first trial, the district court instructed the jury that Flucas could be convicted only if the jury found that "criminal sexual activity was one of the dominant purposes, not merely an incidental purpose, for the transportation from one state to another."  That jury hung and was dismissed.  At the second trial, the government requested a different instruction, over Flucas's objections.  The district court

agreed to the instruction and told the jury it could convict Flucas if "sexual activity was a significant, dominant, or motivating purpose" for transporting the women across state lines.  The second time the jury convicted Flucas.

The question before us is a linguistic one.  No court has considered whether "a motivating purpose" is different from "a dominant or significant purpose."  In my view, those terms are not synonymous.    The instruction lowered the government's burden of proof, contrary to the Supreme Court's decision in *Mortensen v. United States*, 322 U.S. 309 (1944), and our own Mann Act decisions; and the error in instruction is not harmless beyond a reasonable doubt. Flucas may be guilty of committing heinous acts in multiple jurisdictions.    But the government must show that his *dominant* or *significant* purpose for traveling between those jurisdictions was to commit those unlawful sexual acts. He may or may not have done so.  I respectfully dissent.

I

In 1910, born out of a hysteria that "white slavers" were preying upon young women—coercing them into prostitution through threats, intimidation, and force—Congress passed what is commonly called the Mann Act. *See United States v. Vang*, 128 F.3d 1065, 1069–70 (7th Cir. 1997); David J. Langum, *Crossing Over the Line: Legislating Morality and the Mann Act* 3–4 (2006).  Section 2 of the Act stated

> [A]ny person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, or in transporting, in interstate or foreign commerce, or in any Territory or in the

> District of Columbia, any woman or girl for
> the purpose of prostitution or debauchery, or
> for any other immoral purpose, or *with the
> intent and purpose* to induce, entice, or
> compel such woman or girl to become a
> prostitute or to give herself up to debauchery,
> or to engage in any other immoral practice . . .
> shall be deemed guilty of a felony . . . .

White-Slave Traffic Act (Mann Act), Pub. L. No. 277, § 2, 36
Stat. 825 (1910) (emphasis added), *current version* at
18 U.S.C. § 2421. Alas, § 2 of the Mann Act used the term
"intent." Intent is an important, perfectly good legal concept,
but sometimes in a statute, it is not particularly helpful. This
is one of those instances. The question is, what kind of intent
counts? The Mann Act isn't clear on this point.

The Supreme Court took up the question in *Mortensen v.
United States*, 322 U.S. 369 (1944). The Mortensens were
husband and wife who lived in Nebraska, where they ran a
house of prostitution. In 1940, they traveled by car to Salt
Lake City to visit family and national parks. They invited
two of the prostitutes they managed to accompany them on
the trip, and the girls accepted. No acts of prostitution
occurred along the route, nor while they were in Utah. When
the Mortensens and the two young women returned to
Nebraska, the girls resumed their sex trade. The United
States charged the Mortensens with violating the Mann Act
by transporting the girls in interstate commerce from Salt
Lake City to Nebraska for the purpose of engaging in
prostitution. The Court wrote that "[a]n intention that the
women or girls shall engage in the conduct outlawed by
Section 2 must be found to exist before the conclusion of the
interstate journey and *must be the dominant motive of such*

*interstate movement.*" *Id.* at 374 (emphasis added). On that basis, the Court overturned the conviction. Even "assum[ing] that [the Mortensens] anticipated that the two girls would resume their activities as prostitutes," the "interstate vacation trip . . . was [not] undertaken . . . for the purpose of, or as a means of effecting or facilitating, such activities." *Id.* at 374–75. According to the Court, "[w]hat Congress has outlawed by the Mann Act, . . . is the use of interstate commerce as a *calculated means for effectuating sexual immorality.*" *Id.* at 375 (emphasis added). The Court repeated its "dominant purpose" formulation in subsequent Mann Act cases. *See, e.g.*, *Hawkins v. United States*, 358 U.S. 74, 79 (1958) ("dominant purpose"); *Cleveland v. United States*, 329 U.S. 14, 20 (1946) ("dominant motive").

The statute has been amended several times since *Mortensen*. *See Vang*, 128 F.3d at 1069 (recounting the history). The version Flucas was convicted under reads, "[w]hoever knowingly transports any individual in interstate or foreign commerce . . . with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2421(a).[1] Despite amendments that changed the Mann Act's "intent and purpose" language to "intent," *Mortensen* continues to influence our thinking in this area. But the Supreme Court's language in *Mortensen* has also caused great confusion.

---

[1] Flucas was also convicted of violating 18 U.S.C. § 2423(a). The language of § 2423(a) is substantially similar to § 2321(a), but applies to transportation of minors.

A

Federal courts since *Mortensen* have struggled with the Court's "dominant motive" formulation. Indeed, "courts turn handsprings trying to define 'dominant.'" *United States v. McGuire*, 627 F.3d 622, 625 (7th Cir. 2010). For some time, the courts debated whether *Mortensen* meant that the jury must find that illicit sexual conduct was "*the* dominant motive" or "*a* dominant motive" for the interstate transportation. We were concerned that a person could have more than one dominant purpose. The courts quickly agreed, however, that people travel with mixed motives, and that so long as "a dominant motive" was to traffic in prostitution or another illegal criminal sex offense, the Mann Act was satisfied. *See*, *e.g.*, *United States v. Drury*, 582 F.2d 1181, 1185 (8th Cir. 1978) (prostitution must be "one of the dominant purposes of such interstate travel"); *United States v. Snow*, 507 F.2d 22, 24 (7th Cir. 1974) ("It now appears settled that prostitution or other immoral conduct, need not be the sole reason for the transportation . . . ."); *United States v. Salter*, 346 F.2d 509, 511 (6th Cir. 1965) ("It is sufficient if prostitution was only one of the dominant purposes."); *Dingess v. United States*, 315 F.2d 238, 240 (4th Cir. 1963) ("If [the defendant] had some other lawful, but subordinate, purpose which he also sought to serve, the existence of that lawful purpose cannot purify or legitimize the dominant purpose of prostituting his female companions."); *Dunn v. United States*, 190 F.2d 496, 497 (10th Cir. 1951) ("It is enough that one of the dominant purposes was prostitution or debauchery."). *See also Forrest v. United States*, 363 F.2d 348, 350 (5th Cir. 1966).

But the courts thought that the phrase "dominant motive" was still confusing and began tinkering with alternative word

formulas. Word formulas in statutes are typically Congress's effort to capture a "mood." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951). Moods can be hard to describe—a mood is itself "not . . . a body of rigid rules." *Id.* Nevertheless, "[a]s legislation that mood must be respected, even if it can only serve as a standard for judgment." *Id.* In the case of the Mann Act, the federal courts tried to capture Congress's mood by adding their own word formulas. As I demonstrate below, as we changed word formulas, we strayed from *Mortensen*'s determination that the Mann act requires engaging in illicit sexual activity play a dominant role in the decision to travel between jurisdictions.

In the aftermath of *Mortensen*, a number courts of appeals looked to causation language borrowed from tort. They variously required the government to prove that sex trafficking was an "efficient purpose," an "efficient and compelling purpose," or a "compelling and efficient purpose."[2] *See, e.g.*, *Daigle v. United States*, 181 F.2d 311,

---

[2] The earliest use of "efficient purpose" in a published opinion appears just two years after *Mortensen*. *See United States v. Mellor*, 71 F. Supp. 53, 62 (D. Neb. 1946), *aff'd*, 160 F.2d 757 (8th Cir. 1947). The district court in its explanation of the instruction referred to "efficient purpose" as "explanatory causation." 71 F. Supp. at 62. The related term "efficient cause" has its origins in tort. *See* Jeremiah Smith, *Legal Cause in Actions of Tort*, 25 Harv. L. Rev. 303 (1912). Professor Smith's focus was whether "the defendant's tort [was] a substantial factor in producing the damage complained of." *Id.* at 310. He suggested that possible word substitutes for "substantial" might include "efficient," "continuously efficient," and "active and efficient" factor. *Id.* at 310 n.22. Anticipating some of the developments here, he also suggested that "a substantial factor" meant "[n]ot the sole factor, nor the predominant factor. Enough if it is a substantial part of the causative antecedents; if it is one of several substantial factors." *Id.* at 311. *See also* Scott G. Johnson, *The Efficient Proximate Cause Doctrine In California: Ten Years After* Garvey, 2 J. Ins.

314 (1st Cir. 1950) (requiring the government to "prove that the defendants' immoral purpose was 'not a mere incident but rather an efficient purpose prompting and impelling the defendants to the transportation of the girls.'" (quoting *Mellor v. United States*, 160 F.2d 757, 764 (8th Cir. 1942)); *Reamer v. United States*, 318 F.2d 43, 49 (8th Cir. 1963); *United States v. Campbell*, 49 F.3d 1079, 1082 (5th Cir. 1995) ("It is enough that one of the dominant purposes was prostitution or debauchery.  It suffices if one of *the efficient and compelling purposes* in the mind of the accused in the particular transportation was illicit conduct of that kind." (emphasis added) (quoting *Forrest*, 363 F.2d at 349); *United States v. Tyler*, 424 F.2d 510, 512 (10th Cir. 1970) ("'It is enough that one of the purposes was prostitution. It suffices that one of the efficient and compelling purposes in the mind of the accused in a particular transportation was the prostitution charged in the indictment.'"); *United States v. Schneider*, 801 F.3d 186, 194 (3d Cir. 2015) ("It now appears settled that . . . immoral conduct, need not be the sole reason for the transportation; the Act may be violated if [immoral conduct] is a dominant or a compelling and efficient purpose." (alteration in original) (quoting *United States v. Snow*, 507 F.2 22, 24 (7th Cir. 1974)).  In 1997, in an influential opinion reviewing the Mann Act's history and the cases, the Seventh Circuit observed that "courts have used a "dominant purpose' standard but have regarded 'dominant' as synonymous with 'compelling' or 'motivating.'" *Vang*, 128 F.3d at 1071.  The court concluded that "[c]ourts . . . have consistently used the word 'dominant' to mean merely 'significant' or 'compelling' or 'efficient.'" Inexplicably, it further opined that "there has never been any implied

Coverage 1, 5–6 (1999) (noting that in tort "efficient proximate cause" means "predominating cause").

requirement of preeminence of purpose." *Id.* at 1072. *See also McGuire*, 627 F.3d at 625.

Although, prior to *Vang*, the phrase "motivating purpose" had not appeared regularly in cases, it had been used by some courts, usually in a casual way. *See Campbell*, 49 F.3d at 1083. Around 2000, however, the phrase began to show up more frequently. In *United States v. Cryar*, for example, the district court had instructed the jury that the illegal sexual conduct need not be the sole purpose for the travel, but was sufficient under the Mann Act if it was "one of the Defendant's efficient and compelling purposes, or one of the Defendant's dominant purposes." 232 F.3d 1318, 1324 (10th Cir. 2000). The court of appeals affirmed the conviction and, in the process, subtly altered the word formula. The court commented that "there was ample evidence for a jury to determine that *a motivating* or dominant purpose" for Cryar's travel was to engage in sexual conduct with a minor. *Id.* (emphasis added). The language of "motivating purpose" was the Tenth Circuit's imprecise gloss on what the district court had instructed.

The Third Circuit followed suit, approving the addition of "a motivating purpose" to jury instructions. In *United States v. Hayward*, Hayward and his wife owned a competitive cheerleading school and chaperoned six teenaged girls on a trip to London. 359 F.3d 631 (3d Cir. 2004). While there, Hayward plied them with alcohol and engaged in sexual activity with them. At trial, Hayward argued that the jury must find the illegal sexual conduct was "a dominant purpose" for the trip. The district court declined and instructed the jury that it was sufficient if the conduct was "a significant or *motivating* purpose" of the trip to London. *Id.* at 638 (emphasis added). On appeal, Hayward altered his

strategy and claimed that the only proper instruction was that the trip had to be "*the* dominant purpose" for the trip. The court rejected all of Hayward's formulations, finding that the jury instruction was proper. *Id.*

*Hayward*'s emendation was picked up in a prominent federal jury instruction treatise. In a section discussing the Mann Act and citing *Hayward* as its authority, *Modern Federal Jury Instructions* recommends the following instruction for the intent element of 18 U.S.C. § 2421:

> In order to establish this element, it is not necessary for the government to prove that engaging in prostitution was the sole purpose for crossing the state line. A person may have several different purposes or motives for such travel, and each may prompt in varying degrees the act of making the journey. The government must prove beyond a reasonable doubt, however, that a significant or motivating purpose of the travel across a state line was that [said individual(s)] would engage in prostitution. In other words, that illegal activity must not have been merely incidental to the trip.

3 Leonard B. Sand, et al., *Modern Federal Jury Instructions: Criminal*, ¶ 64.01, Instr. 64-4 (2021) (brackets in original). The treatise blended two distinct concepts. The second sentence quoted above uses "purposes" and "motives" as nouns and treats them as synonyms. But the third sentence converts "motive" to an adjective modifying "purpose." As a matter of syntax, the treatise can't have it both ways. Having suggested that "purposes" and "motives" are the

same, a "motivating purpose" is redundant. It's like saying "purposeful purpose" or "motivating motive."

Confusion followed in the commentary. *Modern Federal Jury Instructions* proposes that the illicit sexual activity does not have to be "the dominant motive, but only that it be a dominant motive in that it was *a compelling or significant motivation* for the travel." *Id.* ¶ 64.01, Instr. 64-4, Comment (emphasis added). That statement would accurately capture the pre-2000 consensus. The problem is that between the model instruction and the commentary, the treatise uses "significant purpose," "motivating purpose," "compelling motivation," and "significant motivation" as equivalents. The inconsistency is not explained.[3] *Modern Federal Jury Instructions* has found its way into district court instructions and been approved by at least one court of appeals. *United States v. An Soon Kim*, 471 F. App'x. 82, 84 (2d Cir. 2012) (quoting the district court's instructions, which quote from *Modern Federal Jury Instructions*, and citing the treatise with approval).

---

[3] Compounding its own confusion, in the same paragraph, the treatise also favors eliminating use of the word "dominant" and the phrase "efficient and compelling purpose" in instructions because they are "likely to confuse the jury." But, the treatise proposes using "the clearer terms 'sole purpose' and 'significant or motivating purpose,' which are easier to understand." *Modern Federal Jury Instructions: Criminal*, ¶ 64.01, Instr. 64-4, Comment. Thus, in the same paragraph, the treatise proposes that courts may use "significant motivation," "motivating purpose," or "significant purpose" interchangeably, without any explanation of how those phrases are equivalent.

B

Our own precedent on the proper jury instruction in a Mann Act case has followed a similar twisted path. We first grappled with *Mortensen*'s "dominant motive" in *Langford v. United States*, 178 F.2d 48 (9th Cir. 1949).[4] Langford had acted as Jones's pimp. Eventually Langford asked Jones to marry him, although he told her she would have to continue to engage in prostitution. Jones and Langford traveled to Tijuana to be married, after which they returned to Los Angeles where Jones resumed her prostitution. Citing *Mortensen*, we held that there was sufficient evidence that "[Langford's] dominant motive" for the marriage was to get control of Jones and re-establish a relationship of pander and prostitute. . . and that the trip, marriage and all, had that primary end in view." *Id.* at 52. *See also Powell v. United States*, 347 F.2d 156, 157 (9th Cir. 1965) ("The trial court properly instructed the jury that the immoral purpose . . . [must] exist before the journey ends and supply the dominant motive for the trip.").

We soon began considering the problem of mixed motives. In *Twitchell v. United States*, we reconsidered our

---

[4] We ignored *Mortensen* in *Womble v. United States*, 146 F.2d 263 (9th Cir. 1945). Dewey Womble drove from Louisville, Kentucky, to Stockton, California with Stephen Culp and Dewel Kathleen Womble. After arriving, Dewel Kathleen Womble began working as a prostitute. Dewey Womble claimed "there was no evidence in that transporting Dewel Kathleen Womble he had any intent that she should practice prostitution." *Id.* at 263. We held that intent could be "infer[red] . . . from all the circumstances of the evidence." *Id.* The Supreme Court reversed our decision in a two-sentence opinion holding that there was "want of substantial evidence to sustain the conviction." *Womble v. United States*, 324 U.S. 830, 830 (1945) (per curiam).

prior judgment affirming the conviction of one Harrison Rogers. 330 F.2d 759 (9th Cir. 1964), *on remand from, sub nom., Rogers v. United States*, 376 U.S. 188 (1964), *vacating in part Twitchell v. United States*, 313 F.3d 425 (9th Cir. 1963). Rogers ran a motel in Everett, Washington, in which several units were used for prostitution. A woman named Ryan worked at the motel and occasionally oversaw the prostitutes. When Ryan went to Portland, where she went on a drinking spree, Rogers went and picked her up and returned her to Everett, where she took several weeks to sober up before returning to work at the motel. We reversed Rogers's conviction under the Mann Act:

> [T]here is no showing that Ryan's trip to Portland was for an immoral purpose. It was to visit her home. The most that can be said of the return trip is that the dominant purpose was to get her sobered up and away from home, where she had her drinking problem. Nothing in the record would support a finding that either the or a dominant purpose of that trip was to have her resume immoral activities.

*Id.* at 761.

In *Bush v. United States*, we found the "sole issue" was "the intent of defendant—did he have the intent, purpose and motive in bringing the complaining witness to California to have her engage in immoral practices?" 267 F.2d 483, 485 (9th Cir. 1959). In Bush's case, the issue was not a particularly difficult one. Bush was convicted of taking a seventeen year old from Texas to California, where she began engaging in prostitution, jointly with Bush's wife, who had

been a prostitute in Texas. Upholding the conviction, we stated that "[i]t was not necessary that such intent be the sole and single purpose of the transportation, if such purpose and intent was one of the reasons for the transportation." *Id.* (citation omitted).

We followed *Bush* in *United States v. Fox*, when we made clear that it was "only necessary that the government prove that [prostitution, debauchery, or other immoral purpose] was *one of the dominant purposes*." 425 F.2d 996, 999 (9th Cir. 1970) (emphasis added). We approved the instruction as "a common and correct statement of the law." *Id.* We found no merits in the defendant's claim that the "jury might have misinterpreted the instruction to include situations in which illicit activity was merely incidental to the purpose of the interstate journey." *Id.* at 1000. In a number of cases following *Fox*, we hewed closely to the line that the government must prove that unlawful sexual conduct was at least *a dominant* purpose for the travel. *See United States v. Kinslow*, 860 F.2d 963, 967 (9th Cir. 1988) ("In this circuit, a federal crime under 18 U.S.C. § 2423 exists if the immoral activity is 'one of the dominant purposes' of the transportation. It is not necessary, therefore, that the immoral activity be the only purpose of the trip." (quoting *Fox*, 425 F.2d at 999)); *United States v. Szymanski*, 431 F.2d 946, 946 (9th Cir. 1970) ("a dominant motive"); *Chargois v. United States*, 267 F.2d 410, 412 (9th Cir. 1959) ("a second dominant and substantial purpose"). *See also United States v. Rashkovski*, 301 F.3d 1133, 1137 (9th Cir. 2002); *United States v. Sangetti*, 446 F.2d 552, 552 (9th Cir. 1971) (per curiam). *Cf. Hett v. United States*, 353 F.2d 761, 763 (9th Cir. 1965).

In *United States v. Lukashov*, for the first time, we implicitly approved an instruction that a jury can convict on proof that the interstate travel was "a dominant, significant, *or motivating purpose*." 694 F.3d 1107, 1118 (9th Cir. 2012) (emphasis added).  Lukashov was a long-distance hauler and, on the suggestion of his wife, took his eight-year old stepdaughter with him across the country, sexually abusing her along the way.  On appeal, Lukashov did not challenge the jury instructions.[5]  Instead, he argued that the evidence was insufficient to convict him under 18 U.S.C. § 2241(c) because the purpose of the trip was to deliver goods to the East Coast and return to Oregon.  *Id.* at 1118–19.  We pointed out that Lukashov's claim "ignores the human ability and propensity to act in light of multiple motives and purposes." *Id.* at 1118.  We found the evidence sufficient that "a jury

---

[5] Before the district court, Lukashov requested an instruction that the government must prove beyond a reasonable doubt that "one of the dominant purposes of defendant's interstate travel . . . was to engage in a sexual act [with his stepdaughter]."  Proposed Jury Instructions by Alexander Lukashov, Jr, United States v. Lukashov, No. 3:14-cv-00502-BR (D. Or. filed June 21, 2010), ECF No. 87.  Instead, the district court instructed the jury as follows:

> A person may have different purposes or motives for travel and each may prompt in varying degrees the act of making the journey.  For purposes of the First Element,, the government must prove beyond a reasonable doubt that a dominant, significant, or motivating purpose of Defendants across a state line was to engage in a sexual act with [his stepdaughter].

Final Jury Instructions as to Alexander Lukashov, Jr, United States v. Lukashov, No. 3:14-cv-00502-BR (D. Or. filed July 27, 2010), ECF No. 139.  That jury instruction is, nearly word-for-word, the instruction approved by the Third Circuit in *Hayward* and adopted in *Modern Federal Jury Instructions*.

could rationally infer that Lukashov crossed the Montana–North Dakota and subsequent state lines with 'a dominant, significant, or motivating purpose' of committing additional sexual acts." *Id.* at 1119 (quoting the district court instruction). *See also id.* ("That Lukashov also had a commercial purpose for crossing state lines does not negate the inference that he had a significant or motiving purpose to continue abusing [his stepdaughter] . . . ."). In passing, we remarked that the district court "correctly instructed the jury," but we did not recognize the gloss the district court had added to our prior cases by including the phrase "motivating purpose." *Id.* at 1119.

Our subtle change in *Lukashov* reappeared in *United States v. Lindsay*, 931 F.3d 852 (9th Cir. 2019). Lindsay was convicted under 18 U.S.C. § 2423(b) of traveling to the Philippines, where he had sex with a thirteen-year old girl and paid her family money. The district court in his case gave the jury effectively the same instruction found in *Modern Federal Jury Instructions* and that we nominally approved in *Lukashov*: "The government must prove that a dominant, significant, or motivating purpose of [Lindsay's] travel in foreign commerce was to engage in illicit sexual conduct." *Id*. at 858. Lindsay objected to the jury instruction on appeal, arguing that the statute required "but-for causation." Because Lindsay failed to object in the trial court, we reviewed for plain error.

"Plain error is *error* that is '*clear*' or '*obvious*.' *Id.* at 864 (emphasis added) (quoting *Johnson v. United States* 520 U.S. 461, 467 (1997)). Put another way, "plain error, as we understand that term, is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *United States v. Turman*, 122 F.3d

1167 (9th Cir. 1997), *see United States v. Frady*, 456 U.S. 152, 163 (1982) (error is plain only if trial judge is "derelict in countenancing it"). Thus, a court may determine that there was no error or that there was error, but it was not clear or obvious under current law.**[6]** *See, e.g.*, *United States v. Ferreyro*, No. 19-50325, 2021 WL 5414854, at *1 (9th Cir. 2021) ("But, even assuming error, Ferreyro cites no authority to support that such error was obvious."); *United States v. Meza-Casillas*, 15 F. App'x 408, 409 (9th Cir. 2001) ("Assuming without deciding that either or both arguments would have been well taken, the error, if any, was not 'plain.' A 'plain' error means an error that 'is so clear-cut, so obvious a competent district court judge should be able to avoid it without benefit of [any] objection.' The error here, if any, does not meet that standard.). Contrary to the majority's characterization of *Lindsay*, we did not hold that the instruction was not erroneous. *See* Maj. Op. at 20. Rather, citing *Lukashov*, we held that it was "not *obviously* wrong" and "the district court did not *plainly* err by instructing the jury that Lindsay traveled in foreign commerce for the purpose of engaging in illicit sexual activity if that purpose was *dominant, significant, or motivating*." *Id.* at 19 (emphasis added). Put simply, the district court's instruction in *Lindsay* may have been erroneous, but not clearly or obviously so.

We are not on plain error review here. If we were, I would not only be compelled to follow *Lindsay*, but I would willingly follow it. Given the confusion throughout the federal courts, the district court's instruction here was not

---

**[6]** A court may also determine that an error was obvious but did not affect substantial rights or prejudice the defendant.

obviously erroneous.[7]  But Flucas objected repeatedly to the instruction and made clear that he believed that the district court had reduced the government's burden.  Given the government's change in requested instruction after the first jury hung, Flucas had every reason to object.

Our decisions, like those of our sister circuits, are inconsistent.  Our decision in *Fox* stated one standard—a standard we followed in many other cases.  *Lukashov* and *Lindsay* indirectly approved a different instruction, without acknowledging the change in the instruction.  Although those cases are more recent, neither compels our hand in this case. *Lukashov* was a sufficiency-of-the-evidence case in which the defendant apparently conceded the correctness of the instruction.  Although we pronounced the instruction correct in passing, we did not consider the point raised by Flucas here. So our discussion of the correctness is dicta, at best. *Lindsay* was on plain error review.

The troubling history of the jury instructions in Mann Act cases should give us pause and force us to ask:  Is there a difference between "a dominant purpose," "a significant purpose," and "a motivating purpose"?  If there is not, then why have we experimented with so many formulations?  I take up these questions in the next section.

---

[7] The majority takes this long-running confusion as a sign of the correctness of the instruction.  Maj. Op. at 20 ("our holding . . . is bolstered by a long line of consistent and uniform cases from our sister circuits."); *see also id.* at 33–34 & n.10.  That is, the instruction is correct because it is consistent with similar instructions endorsed by many courts over a period of decades.  But consistency and accuracy are distinct. Courts can be consistently wrong.

II

People are complex. We are pulled by competing interests, representing people, events, and circumstances. Some choices in life are mutually exclusive. We can attend the symphony or go the movies. We can't do both at the same time. But many times, we can accommodate more than one interest—we pick up the dry cleaning on our way home from grocery shopping. We go to the university library to begin research on a term paper, but that is also where our friends are hanging out tonight, and it is quieter than staying in the dorm. And we are capable of holding in our minds multiple reasons for our choices. But not every reason is as important as every other reason. Figuring out what moves us is one of the joys and terrors of life. It is also core to determining *mens rea*.

A

"Dominant," "significant," and "motivating" are three ways of expressing different degrees of influence on a person's decision-making. To my mind, they represent a hierarchy of explanations for our decisions. "Dominant" means "[e]xercising chief authority or rule: ruling, governing, [or] commanding; *most influential*" and "[o]ccupying *a commanding position*." Dominant, *Oxford English Dictionary* (2d ed. 1989) (emphasis added). This represents the most demanding standard. A dominant purpose would occupy a commanding position in an individual's decision-making process. That is, it would be at the forefront of the individual's mind when making the decision. "Significant" means "[s]ufficiently great or important to be worthy of attention; noteworthy; consequential, influential" or "noticeable, substantial, considerable, large." Significant,

*Oxford English Dictionary* (2d ed. 1989). This is, admittedly, not an obvious or large step down from dominant. But it does capture an important idea—a purpose need not be *the* dominant purpose, but it must bear some significance in our decision. In other words, it should be *a* dominant purpose, even if it is not *the* dominant purpose.

By contrast, "motivate" means "[t]o provide or serve as a rationale for (some action, etc.); to justify." Motivate, *Oxford English Dictionary* (2d ed. 1989). This conveys little sense of comparative weight or importance in the decision-making process. A factor can play a small role in a person's decision-making and still motivate them. If we are going to the grocery store because we have no food in the house for dinner, stopping at the dry cleaners might be useful if it is on the way; it supplies an additional motive for the trip, even if it is not so important as to justify a separate trip. Picking up the dry cleaning provides additional value to the trip to the store. That may help motivate us to go (or to go now, before the dry cleaners closes) without being the dominant or even a significant reason for leaving the house. If we are not in hurry to collect the dry cleaning, it may be entirely incidental to our reasons for going out. Even our grocery shopping has its own set of priorities. We need milk, bread, and eggs, but we also pick up a frozen pizza and a Midnight Milky Way. Does each of these items motivate us? Are they of equal of value? Is one or more of the items the dominant reason? A significant reason?

I don't think that "motivating" can bear the same weight as either "dominant" or "significant." It may carry such weight, but it does not necessarily carry the same weight. Here is how we test that.

Following *Mortensen*, federal courts added to their instructions the caveat that the government did not have to prove that crossing state lines for illicit purposes was "*the* dominant purpose" for the trip; it was sufficient if it was "*a* dominant purpose." Similarly, it doesn't do violence to the rule to say that the government doesn't have to prove that interstate travel for illicit purposes was not "*the* significant purpose," but only "*a* significant purpose." As a matter of ordinary conversation, it is also easy to see how we might—in our effort to provide more word clues for the jury—think that the government also does not have to prove that interstate travel was "*the* motivating purpose," but only "*a* motivating purpose." But here is where those formulations break down. Once the jury is told that travel must be "*a* motivating purpose," it is a short step for the jury to think that the government satisfies its burden if it has proven that interstate travel for illicit purposes was *any* motivating purpose, no matter how insignificant.[8] Indeed, "dominant" and "significant" are frequently used as modifiers before some variant of "motivating" in order to emphasize that not any motivation will satisfy the criteria under examination. *See*, *e.g.*, *American Legion v. American Humanist Ass'n*, 139 S. Ct. 2067, 2085 (2019) ("This is not to say that the

---

[8] Instructing the jury that traveling across state lines for illicit sexual activity may not be "merely incidental" to the trip is not sufficient to overcome this error. "Incidental" means "[o]ccurring or liable to occur in fortuitous or subordinate conjunction with something else of which it forms no essential part; casual." Incidental, *Oxford English Dictionary* (2d ed. 1989). Thus, to say that illicit sexual activity may not be "merely incidental" tells the jury that it must have played, at a minimum, some minor role beyond fortuity in the decision to make the trip. That represents a significant departure from the "dominant purpose" test expounded by the Supreme Court in *Mortensen* and that we adopted in *Fox.*

cross's association with the war was the sole or dominant motivation for the inclusion of the symbol in every World War I memorial that features it."); *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 867 (2017) ("The Court must decide whether the Constitution requires an exception to the no-impeachment rule when a juror's statements indicate that racial animus was a significant motivating factor in his or her finding of guilt."); *Palmer v. Thompson*, 403 U.S. 217, 225 (1971) ("It is difficult or impossible for any court to determine the 'sole' or 'dominant' motivation behind the choices of a group of legislators.").

The hierarchy of terms I have proposed here is reflected in *United States v. Generes*, 405 U.S. 93 (1972). It is a tax case, and the particulars are not important to us. But the case "turn[ed] on the proper measure of the required proximate relation" between a bad debt and the taxpayer's business. *Id*. at 96. The court had to determine whether "this necessitate[s] a 'dominant' business motivation on the part of the taxpayer, or is a 'significant' motivation sufficient?" *Id*. at 96. In posing the question, the Court implicitly recognizes that there is a distinction between these two terms. Ultimately, the Court held that a proof of a significant motivation is different from proof of a dominant motivation. "We conclude that . . . the proper measure is that of dominant motivation, and that only significant motivation is not sufficient." *Id*. at 103. By the Supreme Court's reasoning, any "motivation" is certainly an even lower bar than either qualifier that the Court considered.

Similarly, in *United States v. Miller*, a Mann Act case from the Second Circuit, Miller argued that the Act requires proof that criminal sexual activity was "the dominant purpose." 148 F.3d 207, 211 (2d Cir. 1998). The court

rejected the argument. In the process, the Second Circuit used "motivation" and "purpose" interchangeably and explained why one could have more than one dominant purpose for an act:

> [I]n everyday speech we can and do describe groups as "dominant." For example, it makes perfect sense to discuss the "dominant companies" in an industry or the "dominant teams" in a league, and all we mean by describing these companies or teams as "dominant" is that they are relatively more successful or influential than others. Likewise, in the context of multiple purposes, "dominant" simply means that these motivations predominate over other, less powerful motivations for conduct.

*Id*. at 212. If "a motivating purpose" will satisfy the Mann Act, we will have no reason to ask the jury whether "these motivations predominate over other less powerful motivations for conduct"—because any motivating purpose will do.

B

This analysis is confirmed in the 2018 amendments to the current version of the Mann Act. The 2018 amendment to Section 2423(b) makes clear what the dictionary definitions suggest—"motivating" is a lesser standard than "dominant" or "significant." Section 2423, a derivative of Section 4 of the Mann Act, provides harsh penalties for transporting minors to engage in illicit sexual activity. *Compare* 18 U.S.C. § 2421(a) (providing for sentences of "not more

than 10 years") *with id.* § 2423(a) (providing for sentence of "not less than 10 years or for life"); *id.* 2423(b) (providing for sentence of "not more than 30 years).**[9]**   Prior to 2018, § 2423(b) made it a crime for "[a] person [to] travel[] in interstate commerce or travel[] into the United States . . . for the purpose of engaging in any illicit sexual conduct."   In 2018, Congress amended § 2423(b) to make one small change.   The current version of § 2423(b) reads, "A person who travels in interstate commerce or travels into the United States . . . *with a motivating purpose* of engaging in any illicit sexual conduct with another person . . . ."   18 U.S.C. § 2423 (emphasis added).   "With a motivating purpose," replaced "for the purpose of" in the prior iteration of the statute. Critically, Congress did not amend any other sections of the Mann Act, including the two provisions under which Flucas was convicted—§§ 2421(a), 2423(a).   Prior to the 2018 amendment, most federal courts had treated § 2423(b) similar to §§ 2421(a) and 2423(a) and had used "dominant" and "significant" as the qualifiers for "purpose."   *See Schneider*, 801 F.3d at 194; *McGuire*, 627 F.3d at 624–25; *Vang*, 128 F.3d at 1072–73; *but see United States v. Garcia-Lopez*, 234 F.3d 217, 219–20 (5th Cir. 2000) (holding it was not error for the district court to refuse to give "a significant or dominant purpose" instruction and instead instruct that it was "enough if one of the defendant's motives in traveling in foreign commerce was to engage in a sexual act with a minor").

---

**[9]** Section 2423 applies to crimes involving minors.  Section 2423(a), which has language nearly identical to 2421(a), punishes persons who transport minors "with intent that the individual engage in engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense."  Section 2423(b) punishes person who travel to engage in illicit sexual conduct.  Section 2423(b) does not require that the defendant have transported anyone.

Why did Congress tinker with the language? The statute was amended as part of the Abolish Human Trafficking Act of 2017 to make it easier to convict sex tourists. While §§ 2421(a) and 2423(a) punish those who *transport* persons for illicit sex, § 2423(b) punishes those who *travel* for illicit sex. As a legislative summary explained: "In order to help curb foreign offenders and internal [sic] human trafficking, the legislation clarifies that persons who travel overseas *with a motivating purpose* of engaging in illicit sex tourism can be federally prosecuted for their offense." *Cornyn, Klobuchar Bill to Fight Human Trafficking Signed into Law*, East Texas Review (Dec. 22, 2018) (emphasis added), https://easttexasreview.com/cornyn-klobuchar-bill-fight-human-trafficking-passes-senate/. Congress's concern with sex tourism is understandable in context. Whereas §§ 2421(a) and 2423(a) punish one who "knowingly transports" a victim across state lines for a particular purpose—a deliberate act involving at least two people—§ 2423(b) punishes mere "travel" across a border with bad intent. It makes sense for Congress to try to reach a sex tourist who comes to the United States with mixed motives—to see the Empire State Building and the Grand Canyon and also to have illicit sex. In that situation, Congress might well try the outer boundaries of its authority to punish any "motivating purpose" for travelers, but be satisfied with the historic limits—a "dominant" or "significant" purpose—when it comes to persons who knowingly transport others for immoral purposes.[10] By

---

[10] Section 2423(c) has lowered the bar to prosecution even more. It makes it illegal to travel in foreign commerce "and engage[] in any illegal sexual conduct." 18 U.S.C. § 2423(c). No proof of intent or motive is required; it is a strict liability statute. *United States v. Pepe*, 895 F.3d 679, 688 n.4 (9th Cir. 2018) ("[Section] 2423(c) doesn't itself require a mens rea . . . ."). *See* Sex Tourism Prohibition Improvement Act of 2002, H.R. Rep. No. 107-525, at 3 (The bill "eliminates the intent requirement"), 5

making "motivating purpose" the standard in § 2423(b), Congress lowered the government's burden of proof for conviction. The 2018 amendment removes any possibility that a jury may acquit if the defendant's purpose was not a dominant or significant one. By not amending §§2421(a) and 2423(a) at the same time, Congress left the higher burden of proof in place.

### III

My concerns are not mere classroom hypotheticals. When the district court added that word "motivating" to the jury instruction, it lowered the government's burden of proof. At Flucas's second trial, the jury was told that it was sufficient if the government has proven that "the sexual activity was a significant, dominant, or motivating purpose" for Flucas's move to California. We should not be surprised that the jury thought that it could convict Flucas if the sexual activity was "*any* motivating purpose" for his travel from Oregon to California. That is a clear departure from the Supreme Court's decision in *Mortensen*.

The district court's decision to add "or motivating" to the instruction plainly was a critical change from the first trial to the second. The government didn't request it idly, and Flucas's counsel promptly objected and identified the

---

(2002). I note that the 2002 bill did not pass, but it became the basis for later amendments. *See* Sara Sun Beale, *Prosecuting Sexual Exploitation and Trafficking Abroad: Congress, the Courts, and the Constitution*, 27 Duke J. Gender L. & Pol'y 25, 26–27, 27 n.12 (2020).

problem for the district court.[11]  When the second jury was told it could find Flucas guilty if "the [illegal] sexual activity was a significant, dominant, *or motivating* purpose," only one of those needed be true to convict because the instruction was phrased in the disjunctive.  That gave the jury a choice of standards, and we must assume that it chose the common denominator—"motivating"—because satisfying that standard would automatically satisfy the higher standards of "dominant" and "significant."[12]  The instruction thus improperly lowered the bar from the required intent—a *dominant* or *significant* purpose.

That reduced standard could have made a difference here, one that we cannot conclude was harmless beyond a reasonable doubt.  *See McDonnell v. United States*, 136 S. Ct. 2355, 2375 (2016); *Chapman v. California*, 386 U.S. 18, 24 (1967).  The evidence in this case must have been difficult to hear.  Flucas testified at trial and he admitted to having sex

---

[11] Counsel for Flucas explained his objection to the district court: "I think significant and dominant are equal.  Motivating is lower.  And incidental is even lower than that.  So I think that motivating is—just means something totally different than significant or dominant."  He advised the court that "significant" and "dominant" had been approved in prior cases, "but the motivating is a new—a new word put in there."

[12] The majority refers to my point as a "speculative assertion."  Maj. Op. 13 n.6.  I am not sure why that is significant.  We never know what the basis for a jury's decision is.  We assume that juries follow their instructions.  *United States v. Mitchell*, 502 F.3d 931, 990 (9th Cir. 2007).  "We cannot know what this jury did behind closed doors.  The standard the jury applied can only be gleaned from examining what the jury was told."  *Chalmers v. Mitchell*, 73 F.3d 1262, 1267 (2d Cir. 1996).  Flucas's jury was provided with a disjunctive, and one of the alternatives is erroneous.  We have to assume that the jury followed the district court's instruction and decided on the basis of the bad instruction.

with at least one of his daughters and a stepdaughter and fathering children by them. There was also very strong evidence that Flucas had repeatedly had sex with his daughters and others over a long period, including his time in Georgia, his stay in Oregon, and after his move to California. And the government elicited from Flucas that he knew what he had done was wrong and that he had considered fleeing the country. But the evidence that illicit sexual conduct with his daughters and other young women was a dominant or significant reason Flucas moved his family from Oregon to California was flimsy. Flucas was settled in Klamath Falls, Oregon, where he had a job with the school district that worked out to about $18 per hour. In addition to his salary, he received another $10,000 to compensate him for his mileage. Flucas had asked the Klamath school district for more money, but the district told him there would be no bump in salary and that it planned to reduce his mileage compensation. In the meantime, the Stockton Unified School District made him a better offer, one that would work out to about $31 per hour, plus compensation for his mileage. It would be more money for fewer hours. In addition, the school district offered his wife a salaried position as well, also working with hearing-impaired students.

So why did Flucas move to California? To take a new job, as the defense argued? Or to continue to sexually abuse his children, as the government claimed? The choices are not mutually exclusive, but they do require some assessment of the relative weight of Flucas's motives for accepting a new teaching position and moving his family. But without considering the relative weight of his reasons for moving, the jury may be very tempted to punish Flucas because (1) he crossed a state line and (2) he was a serial sexual abuser. But traveling across a state line while a serial sex abuser is not

sufficient for a conviction under the Mann Act. Being a serial sexual abuser describes one's status, not a purpose for crossing a state line. There is a serious doubt that Flucas crossed the Oregon-California border with his family and moving truck as "calculated means for effectuating sexual immorality." *Mortensen*, 332 U.S. at 375.

\* \* \* \*

One final, broader observation. The Mann Act is a parasitic act because it depends on violations of the laws of non-federal jurisdictions. The Act punishes "any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2421(a). Sex crimes are traditionally defined by state law. That means that the interstate transportation element is the only thing that narrows the Mann Act; otherwise, federal law would be at least coextensive with state law. This should concern us. "[G]iven the structure of our federal criminal justice system, we would expect that state laws criminalizing sexual activity with minors would encompass a broader range of conduct than federal laws." *United States v. McCauley*, 983 F.3d 690, 696 (4th Cir. 2020). We should hesitate long before we attribute to Congress an exercise of power to displace the states in this traditional area of state control. *See United States v. Lopez*, 514 U.S. 549, 564 (1995) (warning that the "implications of the Government's arguments" make it "difficult to perceive any limitation on federal power . . . in areas such as criminal law enforcement . . . where States historically have been sovereign."). "When charged conduct does not fall in the heartland of [the Mann Act's] proscription, the risk of prejudice becomes more palpable." *McCauley*, 983 F.3d at 698. This is not to say that Flucas's "conduct was in any way excusable or beyond the reach of the criminal law. It is

simply that it is quite possible that properly instructed the jury would find this defendant's conduct falls outside" of *federal* criminal jurisdiction.  *Id.*

## IV

I would reverse the judgment of conviction and remand to the district court with instructions that if the government wishes to retry Flucas, the jury must be instructed that his continued illicit sexual conduct was one of the dominant or significant purposes for moving his family from Oregon to California.

For these reasons, I respectfully dissent.